Bauer *v.* The City of Indianapolis *et al.*

No. 10,879.

## BAUER *v.* THE CITY OF INDIANAPOLIS ET AL.

SUPREME COURT.—*Evidence.*—*Witness.*—*Record.*—*Exception.*—An exception to the ruling of the trial court, in refusing to permit a party to put a question to his own witness, presents no question in the Supreme Court unless the record shows the evidence intended to be elicited, and that the court was informed thereof.

CITY.—*Sidewalk.*—*Negligence.*—*Evidence.*—In a suit against a city for an injury received in consequence of an obstruction upon a sidewalk, evidence that others had passed over it without injury is not admissible; nor is evidence that the plank crossing, which was the obstruction, was not different from the generality of crossings of like character in the city.

From the Superior Court of Marion County.

*A. C. Harris* and *W. H. Calkins,* for appellant.

*R. B. Duncan, C. W. Smith* and *J. S. Duncan,* for appellees.

COLERICK, C.—This action was brought by the appellant against the appellees to recover damages sustained by him in the breaking of his leg, which was caused, as alleged, by his falling upon a sidewalk in the city of Indianapolis, Indiana. It was averred in the complaint, that the appellee Baker, without leave or license from his co-appellee, the city of Indianapolis, had unlawfully, carelessly and negligently obstructed a sidewalk, adjoining certain real estate owned by him, in said city, by causing to be placed thereon a large number of heavy planks and timbers, which raised the otherwise even surface of the sidewalk, at said point, several inches higher than it was on either side of the obstruction, and rendered passage over the sidewalk dangerous to travellers passing thereon, and that the city had notice of the dangerous obstruction of said sidewalk, which remained thereon, and was maintained by said Baker, with the knowledge of the city, for the period of three months, and that the city, for said period of time, had carelessly and negligently suffered and permitted said obstruction to remain thereon, without attempting to remove it, and that the appellant, without fault

or negligence on his part, and whilst using due care, on the 23d day of December, 1880, in passing over and along said sidewalk in the dusk of the evening, while said obstruction was partially obscured by snow, was violently thrown to the ground, in consequence of said obstruction, and his leg was thereby fractured and broken, etc. Wherefore, etc.

To this complaint, an answer of general denial was filed. The issues were tried by a jury, who returned a verdict in favor of the appellees, upon which, over a motion for a new trial, judgment was rendered.

The only error assigned is the overruling of the motion for a new trial, and of the many causes specified in its support the only ones that are urged in this court are the rulings of the court below in the admission and exclusion of certain evidence, which is recited in the motion, and the giving by the court to the jury of certain instructions, to which we will hereafter more fully refer.

To properly appreciate the questions submitted for our consideration, it is essential that the facts in the case should be briefly stated. The following statement of the facts appears in the appellant's brief, and we find, on an examination of the record, that it is in harmony with and fully supported by the evidence adduced at the trial :

" The plaintiff relied for a recovery on the facts following : That on the evening of the 23d day of December, 1880, about dusk, he was walking on the sidewalk, at a brisk pace, on the north side of South street, and on the south side of the lot owned by the defendant Baker, in the city of Indianapolis ; that Baker had, some one or two years before that time, laid a carriage way across the sidewalk, for his own private use, which was made of heavy two and one-half or three inch plank, laid lengthwise on the pavement; that either from imperfect construction, or by having warped in the sun, the ends of the planks stuck up above the surface of the sidewalk from one to four inches, some sticking up higher than others ; that on the afternoon of said 23d day of De-

cember a light skift of snow had fallen, perhaps half an inch, which partially covered the defects in the sidewalk; that he stepped with his right foot on the ends of the planks, which slipped off with such force that it caused him to fall and break his leg and hurt his arm."

The first question presented for our consideration is the action of the court in excluding certain evidence. It appears that James T. Marshall, a police officer of the city, was called by the appellant as a witness, and testified, among other things, that he heard the appellant groan, and that he went to his rescue after he fell, and found him lying on the planks, apparently hurt, and that he helped him up, and assisted him home. In his examination-in-chief he alluded to a conversation he had with the appellant when he first went up to him, but did not state what was said in the conversation. The bill of exceptions shows that on his cross-examination and re-examination, he testified as follows:

CROSS-EXAMINATION.

\* \* \* \* \* \* \* \* \* \* \*

" Question. He told you he had slipped and fallen, did he? Answer. I could not tell you the exact words the gentleman said, with the exception of some few things that bore on my mind.

" Ques. You asked him how it happened, did you not? Ans. No, sir; he said this way, he says, ' Now I have made a good day's work.'

" Ques. (Interrupting.) I do not care about that, I want to know what he said about slipping? Ans. He said he had fell there, and hurt himself.

" Ques. Did he say he had slipped and fallen? Ans. That is something I could not tell you.

" Ques. You do not know what he said on that subject? Ans. No, sir; not on that one specific subject, but I remember of other statements he made to me."

RE-EXAMINATION.

" Ques. Now I wish you would go ahead and give the

whole of that conversation at the time the plaintiff fell there, you have given part of it, now give the whole of it?

" Objected to as incompetent, except so far as it pertains to how the plaintiff fell.

" Court. To that extent I sustain the objection.

" To which ruling of the court the plaintiff, by his counsel, then and there excepted.

"Ans. There was nothing said any more about his slipping and falling. The rest was in relation to his family."

If any error was committed by the court in its ruling in sustaining, to the extent stated, the objection to the question propounded, which we need not decide, it was harmless, as it clearly appears by the answer of the witness to the question last propounded, that he had repeated, on his cross-examination, all that was said to him by the appellant in the conversation alluded to, that was relevant or material to the issues in the case. It is insisted by the appellant that it was competent for him to give in evidence his exclamations of pain and suffering, caused by the injury. Such is the law, see 1 Greenl. Ev., section 102; but it has been often held by this court that " The sustaining of an objection to a question asked by a party to his own witness is not available as error in this court, unless the record shows that the trial court was informed what was proposed to be proved by the answer to the question." See *Conden* v. *Morningstar,* 94 Ind. 150, and the cases there cited. In this case no such information was imparted to the court. The record fails to show that any question relating to that subject was ever propounded by the appellant. No available error, if any, was committed by the court in its ruling.

The record shows that the following evidence was introduced by the appellees on the trial, over the objection of the appellant:

" Benjamin Davis testified as follows:

"'Question. State whether you ever fell, stumbled, or

stumped your toe on that place going along over it? Answer. I never stumbled over it.

" Ques. Who, if any one else, did you ever see stumble there? Ans. I never saw anybody.

" Ques. Who, if any one, did you ever hear of doing anything of that kind prior to your hearing of this plaintiff stumbling there? Ans. I have no recollection of hearing of any one stumbling or falling there.

" Ques. What difference, if any, did you notice between this crossing and the generality of crossings, as you observed them? Ans. It would about average with the other crossings.

" Ques. You state that as a fact, do you? Ans. I state that as my judgment.

" Ques. You say that is your judgment, based upon what? Ans. The general appearance of the crossing with others.

\*    \*    \*    \*  . \*    \*    \*    \*    \*    \*

" James Caldwell testified as follows :

" Ques. If you ever stumbled or fell, or saw any one stumble or fall, then tell the jury? Ans. I never did.

" Ques. What, if anything, did you ever hear of any one stumbling or falling there before Mr. Bauer was hurt? Ans. I never did.

" Ques. Have you observed other crossings as you would be travelling around the city? Ans. Yes, sir, I have.

" Ques. What difference, if any, would there be between the generality of them and this one? Ans. I have seen some worse ones and some better.

" Ques. As a fact, how is it as to the generality of the others you have seen? Ans. As good."

Similar questions were asked by the appellees of other witnesses, and answered by them.

The court erred in permitting the appellees to prove that persons other than the appellant had safely passed over the crossing in question. The evidence was incompetent. See *Kidder* v. *Dunstable,* 11 Gray, 342 ; *Temperance Hall Ass'n of Trenton* v. *Giles,* 33 N. J. L. 260. In the case first cited

it was held that in an action against a town for injuries sustained from a defect in a highway, evidence that persons other than the plaintiff had passed and repassed the place in safety was inadmissible. And in the case last cited it was held that it was not competent, on the part of the defendant, to prove that persons had passed and repassed without accident the area opening into the sidewalk in which the plaintiff had fallen and was injured. The court said : " The reason for excluding all evidence of this character is, that it would lead to the trial of a multitude of distinct issues, involving a profitless waste of the time of the court, and tending to distract the attention of the jury from the real point in issue, without possessing the slightest force as proof of the matters of fact involved."

It was correctly stated by this court in *Nave* v. *Flack*, 90 Ind. 205 (46 Am. R. 205): " If the place was actually dangerous, then the fact that others had used it and escaped unhurt would not relieve the appellants from liability. The ruling question was whether the place was in truth dangerous, and if it was shown to be so then the fact that others had used it in safety would not change its character, nor deprive the appellee of his right to redress. A place proved to be unsafe may have been used without harm, but because this has been done does not alter its actual condition. Men may and do use unsafe places without receiving injury, but this does not show that a place proved to be really dangerous is not so."

The case of *City of Delphi* v. *Lowery*, 74 Ind. 520, is not in conflict with the views above expressed. In that case it was properly held that for the purpose of showing that a municipal corporation had notice of a dangerous place within or near the limits of one of its streets, evidence that other persons had previously been injured there is competent. The doctrine there declared is now established as the law by the current and weight of authority. But such proof does not authorize the city to prove that other persons had passed the place in safety. Such negative evidence would have no force or weight, for the reasons stated in *Nave* v. *Flack, supra.*

The court also erred in allowing the appellees to prove that there was no difference between the crossing in question and the generality of crossings of like character in the city. Evidently, the purpose and tendency of the evidence were to show that in respect to its safety to persons passing over it the crossing in question compared favorably with other similar crossings in the city. If it did, such fact, although established by incontrovertible proof, would not shield the appellees from liability to one who, without fault or negligence on his part, was injured in passing over it, by reason of its dangerous condition, as it was the duty of the owner of the property upon which it existed to see that the crossing was at all times safe and free from danger to persons lawfully passing over it, regardless of the condition of other like crossings. The law in such a case will afford no immunity from liability to the injured person by proof that the crossing was no more dangerous than other crossings of a similar character in the city. If they were all equally dangerous to cross, it would constitute no defence to the action. The evidence was irrelevant and immaterial, and therefore incompetent. See *Bliss* v. *Wilbraham*, 8 Allen, 564, where it was held that in an action against a town to recover damages for an injury by reason of a defective bridge, no exception lies to the exclusion of a question, put to the defendant, as to how the bridge compared on the day of the accident, in respect to its safety and state of repair, with other bridges of like character on roads of like amount of travel.

The court in its fifth instruction stated to the jury, among other things, that they might consider " how often, if at all, persons other than the plaintiff, and before the alleged injury to him, passed over the crossing without stumbling or slipping upon it," and in its fourth instruction stated that, " in determining whether or not the sidewalk in question was reasonably safe at the time of the alleged accident to the plaintiff," the jury might consider, among other things, " how it compared in its general character with the generality of sim-

ilar plank crossings over sidewalks in the city of Indianapolis." These two instructions, to the extent quoted at least, were, for the reasons above stated, erroneous.

The court erred in overruling the motion for a new trial, and for the error so committed the judgment ought to be reversed.

PER CURIAM.—The judgment of the court below is reversed at the costs of the appellees, and the cause is remanded with instructions to the court to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.

Filed Dec. 17, 1884.