[Civ. No. 94.  First Appellate District.—December 9, 1905.]

# DANIEL SHEEHAN, Respondent, v. MANTON E. HAM-MOND, Appellant.

ACTION FOR NEGLIGENCE—NEW TRIAL—PUBLISHED CHARGE OF SUBOR-NATION OF PERJURY—NEGLECT TO INFORM COURT—ABSENCE OF SHOWING—PRESUMPTION.—In an action for injuries to plaintiff through negligence of defendant, where the verdict was for plaintiff, the publication of newspaper articles, during the trial, charging de-fendant with subornation of perjury, is not sufficient ground for granting a new trial to the defendant, where he thereafter proceeded with the trial, without objection, or informing the court thereof un-til after verdict, and made no showing that any of the jurors read the articles.  In the absence of such showing, it must be pre-sumed that the jury did its duty, and acted conscientiously.

ID.—INDISCREET ORDER FOR COMMITMENT AFTER RETIREMENT OF JURY—IGNORANCE OF JURORS.—An indiscreet order of the court for the commitment of the defendant on a charge of subornation of per-jury, made after the retirement of the jury, where it is shown that none of the jurors had knowledge of it until after their verdict, is not ground for granting a new trial to the defendant.

ID.—MASTER AND SERVANT—INJURY TO MINOR—DEFECTIVE WHEEL—FAILURE TO WARN OF DANGER—SUPPORT OF VERDICT—QUESTIONS FOR JURY.—In an action for injury to a minor employed by the de-fendant, where there was evidence tending to show that the polishing wheel at which he was employed was too far from the board on top of the table, and thus left space for the plaintiff's fingers to be drawn into the opening, and that the revolving wheel was not true, but would "wobble," and that the plaintiff was not warned of the danger in operating the wheel, it was sufficient to sustain the ver-dict, these matters being questions for the determination of the jury.

ID.—OPERATION OF FACTORY BY EXECUTOR—LIABILITY FOR DAMAGES—PLEADINGS—BURDEN OF PROOF.—Where the pleadings showed that at the time of the injury, defendant was operating the factory and wheel, and defendant averred that he was operating it for the own-ers, as executor, and testified that he employed and discharged ser-vants and operators, but did not attempt to show that he was not one of the owners, nor that he was operating only for the parties, the burden of proof being upon him to show that fact, he cannot escape liability for damages for his negligence on the ground that he was acting as executor of the will of a former owner.

ID.—IRRELEVANT EVIDENCE—ABSENCE OF PREVIOUS INJURY.—Evidence that defendant previously never had any trouble of any kind and that no one was injured on that wheel before the injury to plaintiff, was properly excluded as incompetent and irrelevant and immaterial to the issue of defendant's negligence as the cause of the injury complained of.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Van Ness & Redman, for Appellant.

Sullivan & Sullivan, for Respondent.

COOPER, J.—This action was brought by plaintiff, a minor, aged thirteen years, through his guardian ad litem, to recover damages for personal injuries claimed to have resulted from the negligence of defendant in furnishing plaintiff insecure and unsafe appliances with which to perform the work to which he was assigned, and in requiring him to do certain dangerous and hazardous work concerning which he had had no experience or knowledge, without instructing him as to the dangers incident to the work and the dangerous character of the machinery and appliances. The case was tried before a jury, and a verdict rendered for plaintiff in the sum of $1,000. Defendant made a motion for a new trial, which was denied, and this appeal is from the order denying the motion, and from the judgment.

Defendant claims that the judge before whom the trial was proceeding publicly denounced him through certain articles in three leading newspapers of San Francisco, and thus injured him and his defense in the eyes of the jury. The facts that led up to the publication of the articles in the papers may be briefly stated as follows: The plaintiff was employed by defendant to polish telephone boxes by holding them against a rapidly revolving wheel covered with sandpaper. The wheel revolved close to a table, which came up to about the center of the wheel and which was about a quarter to half an inch from the revolving wheel. Plaintiff claimed that he was injured while engaged in his ordinary business of polishing a telephone box. Defendant claimed that as a matter of fact at the time of the injury the plaintiff was not engaged in polishing a telephone box, but was, of his own volition, engaged in sharpening a stick on the wheel, which was dangerous, and that the injury was caused by plaintiff's fingers catching in

between the stick and the wheel and being pulled in between the table and the revolving wheel. Defendant introduced evidence tending to show that plaintiff was so engaged in sharpening a stick on the wheel. One witness testified that a few moments before the accident he saw plaintiff holding a stick against the wheel. Two or three other witnesses testified to seeing the stick under the table partly sharpened, and one witness testified to seeing blood upon the stick. Defendant called Walter Fahey, a boy sixteen years of age, a companion of plaintiff, who was working for defendant at another table about five feet away from plaintiff, at the time the plaintiff was injured. Fahey testified that plaintiff was attempting to sharpen a stick against the wheel, and that the wheel drew the end of the stick down between it and the table, thereby throwing the other end up against the wheel, and thus catching the plaintiff's hand between the stick and the wheel, causing the injuries to plaintiff. Upon his cross-examination Fahey testified that the evidence given by him in the direct examination was false, and had been given at the solicitation of and under the direction of defendant, that plaintiff did not have a stick in his hand, and was not engaged in sharpening a stick at the time of the injury, but that plaintiff was engaged in his ordinary work polishing a telephone box. This statement of Fahey made in cross-examination was made in the afternoon of February 2d, and seems to have caused some excitement in the courtroom. The next morning, February 3d, before the trial was completed, the San Francisco "Call," the "Chronicle," and the "Examiner" each had glaring headlines in regard to the matter, followed by a statement of the reporters' views upon it. These articles were headed: "Perjures Word to Hold Place. Boy Witness Makes a Startling Disclosure on the Stand. Says Capitalist Hammond Suborned Him under Promise of a Position." And: "Manton E. Hammond Wanted Boy Witness to Swear Falsely. Gave Him Employment for Untruthful Story. Cross-Examination Brings out the Truth in a Damage Suit. Judge Graham may Ask the Grand Jury to Investigate the Serious Charge Made." And: "Promised Position for Testifying Falsely. Reason Given by Walter Fey for the Sudden and Complete Change in His Evidence in a Suit for Damages. Declares That Manton

E. Hammond Offered Him a Good Job if He would Become a Witness for the Defense.'' The article in the "Call" was probably most severe on the defendant. It closed by saying that upon being seen at his house last night Judge Graham said: "That was about as rank a piece of subornation as has ever come before the bar in this city. Hammond has not a peg to stand on. When the case is completed, I will certainly hale him and his boy witness before the grand jury." The next morning, upon being again called to the stand in redirect examination, Fahey testified that his cross-examination was false, and that he had stated the truth in direct examination. He further said that Mrs. Sheehan, the mother of plaintiff, had promised him one-fourth of all she recovered in consideration of his testimony. Both the mother and the grandmother of the boy Fahey testified that after plaintiff was injured, when the boy came home, he told them that plaintiff was injured while attempting to sharpen a stick upon the wheel.

It is thus seen that the public journals referred to denounced defendant as a felon upon the uncorroborated statement of a boy who admitted afterward that his whole statement in cross-examination was untrue, and whose first statement, whether true or not, was strongly corroborated. But no matter what may have been the motives of the said public journals in publishing the articles, we do not think under the circumstances of this case they constitute in law a sufficient ground for reversing the order denying a new trial. It is not made to appear, except as stated in the articles, that the judge ever made any remarks about the case or about the defendant. We cannot presume that a judge would so far forget the duties of his high position as to make such remarks. It is not made to appear that any of the jurors read the articles or any of them. Not only this, but the next morning after the publication of the articles the defendant and his counsel, instead of calling the court's attention to them then and there, proceeded with the trial of the case without objection. They do not appear to have made any objection at all until after the trial was over and the verdict pronounced against the defendant. The defendant cannot be allowed to remain quiet and take the chances upon a favorable verdict, and then raise a point that he knew of, and could have raised, during the progress of the trial. (*Monaghan* v. *Rolling Mill Co.*, 81 Cal. 194, [22 Pac.

590]; 1 Hayne on New Trial, sec. 27, and cases cited; *Consolidated Ice Machine Co.* v. *Trenton Ice Co.* (C. C.), 57 Fed. 898.) We do not think it would be a safe rule to grant a new trial on account of statements in public journals during the trial, which statements do not appear to have been read by the jurors, and to which the court's attention was not called until the termination of the trial. We must presume that the jury did its duty and acted conscientiously.

After the case was finally submitted to the jury and it had retired, the court made an order in which it recited that the "evidence given by Walter Fahey was a tissue of falsehoods so plain and palpable as to be indisputable. The record also discloses that he has been suborned to testify as he did by the defendant in this case, Manton E. Hammond," and further committed the defendant to the custody of the sheriff on the charge of subornation of perjury, and fixed his bail at $2,000. It is needless to say that the above order of the court was indiscreet, and was evidently made without that mature and careful deliberation that should characterize all judicial action. To find a citizen guilty of a felony by an *ex parte* order while he has a case on trial before the court, and this upon the testimony of one whose testimony is found to be a "tissue of falsehoods," might, if known to the jury, have seriously injured defendant. The boy had testified for plaintiff in his cross-examination, and had said that plaintiff's mother had promised him one-fourth of the judgment recovered. If this was true, the plaintiff's mother was guilty of subornation of perjury. But the order of the court, under the circumstances disclosed by the record, is not ground for granting a new trial. It was not made in the presence or hearing of the jury. The bailiff who had charge of the jury swears that the jury after they retired were not permitted to speak to anyone, or to see any newspaper, and that they had no knowledge of the order of the court until after the verdict has been rendered and they were discharged. We must again presume that the jury did its duty. We cannot set aside its verdict because the court, after the jury retired, made an order of which the jury was ignorant. The affidavit of the bailiff shows that the jury were not influenced by or informed of the order. (*Estate of McKenna,* 143 Cal. 580, [77 Pac. 461].) The evidence is sufficient to sustain the verdict. There was evidence

tending to show that the wheel was too far from the board on top of the table, and thus left space sufficient for the plaintiff's fingers to be drawn into the opening, and that the revolving wheel was not true, but would "wobble." There was also evidence tending to show that plaintiff was not warned of the danger in operating the wheel. Of course, these matters were for the jury.

It is urged that as the defendant was the executor of the will of John Hammond, deceased, he could not be held for damages, but that, if there is any liability, such liability is upon the owners of the property. The complaint alleges that at the time of the injury the defendant was operating the factory and the wheel therein. It is not denied that the defendant was operating the factory, but defendant alleges affirmatively that he was operating it for the owners. He testified to facts which show that he was operating the factory, and that he employed and discharged the servants and operators. He does not attempt to show that he was not one of the owners, nor that he was operating the factory for some other party or parties. In such case the defendant cannot escape responsibility. He was operating the factory, employed the men and discharged them, and, if he desired to escape liability by claiming that he was operating the factory for other parties, it was incumbent upon him to make such proof.

It is claimed that the court erred in certain rulings on the admissibility or rejection of evidence during the trial. The first of such alleged errors was in regard to the evidence of Hasty, the defendant's foreman carpenter. He testified to hearing the plaintiff scream, and to assisting in throwing off the belt and stopping the wheel. He also described the wheel, its uses, and the table used in operating it. He testified to showing the plaintiff how to operate the wheel and as to warning him of its danger. He was then asked by defendant: "Q. Did you ever have any trouble of any kind, or was anybody ever injured on that wheel before that time?" The plaintiff objected to the question on the ground that it was incompetent, irrelevant, and immaterial. The court sustained the objection. Defendant claims the evidence was admissible for the purpose of showing how the accident occurred. We do not think it tended to prove how the accident occurred; and certainly the fact that the defendant had never injured any-

one before by the wheel would not excuse the injury on this occasion, if caused by his negligence. If a piece of machinery is operated negligently for years, and finally some one is injured by such negligent operation, the owner cannot by way of excuse show that no prior injury had occurred. (*Silveria* v. *Iversen,* 128 Cal. 192, [60 Pac. 687].) The reason given for the exclusion of this class of evidence is given in *Temperance Hall Assn. of Trenton* v. *Giles,* 33 N. J. L. 265, as follows: "That it would lead to the trial of a multitude of distinct issues, involving a profitless waste of time of the court, and tending to distract the attention of the jury from the real point in issue, without possessing the slightest force as proof of the matters involved." (See 1 Greenleaf on Evidence, sec. 52; *Bauer* v. *City of Indianapolis,* 99 Ind. 56; *Burgess* v. *Davis Sulphur Ore Co.,* 165 Mass. 75, [42 N. E. 501].)

It is not necessary to notice in detail the other of such alleged errors. It is sufficient to say that we have examined them, and find no error sufficient to justify a reversal of the order.

The judgment and order are affirmed.

Harrison, P. J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1906.