[Crim. No. 1896.   Third Dist.   Apr. 7, 1945.]

THE PEOPLE, Respondent, v. JOE V. QUIEL, Appellant.

Lawrence Edwards and Chas. H. Epperson for Appellant.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

THOMPSON, J.—The appellant and Lowell Bell were jointly charged and convicted of petty theft and prior convictions of felonies. They were tried with a jury. The appellant admitted the prior conviction of felony. A motion for new trial was granted the defendant Bell, but denied as to the appellant, who was thereupon sentenced to state prison for the indeterminate term prescribed by law. From that judgment and order denying a new trial Joe V. Quiel appealed.

It is contended the verdict and judgment are not supported by the evidence; that the court erred in denying appellant's motion for new trial, and that the judgment is harsh and excessive.

The evidence adequately supports the verdict and judgment of conviction of the appellant. The evidence is uncontradicted. No witnesses were called for the defendants. They did not take the witness stand in their own behalf. The transcript shows that on September 9, 1944, Barbara Lou Nich-

ols drove her Ford sedan automobile to the home of her sister, Margaret Briscoe, on Flora Street in Stockton. Miss Nichols was accompanied by her friend Barbara Noble, who sat by her side on the front seat of the car. Miss Noble then held her zipper purse containing two bank checks payable to her in the sums of $32 and $34 respectively, together with some small change and cosmetics. The machine was parked on the street directly in front of the Briscoe home. As the ladies got out of their car Miss Noble placed her purse in the middle of the front seat of the machine and left it there. They entered the house. Margaret Briscoe sat at the front window sewing. From that window there was a clear view of the Ford sedan. They immediately observed the defendants' machine stop very close to their parked car. The defendants were strangers to the ladies. The driver of defendants' machine, Lowell Bell, got out and lifted the hood of his car as though he were looking for engine trouble. Margaret Briscoe testified that at the same time she saw the appellant go to the Ford sedan and reach into that car. She said:

"I was watching him [Mr. Bell as he raised the hood of his own machine], then my attention was attracted by someone in the car. He had reached in. His whole forepart of his body was in the car. . . . Q. And how much of his body was in the car? A. Well, I should say . . . almost his whole body with the exception of his legs, as if he was reaching over for something."

She ran "from the dining room to the living room," and thence to the front entrance and yelled at the men, saying "Hey." By that time both men had reentered their own car and Mr. Bell started the motor. The ladies ran out and accused Quiel of taking something from their car. He said "I didn't take nothing." They then drove away. Miss Nichols then saw the purse and picked it up from the street. It was found midway between their own car and the position previously occupied by defendants' machine. She handed Miss Noble her purse. Upon investigation they found that the bank checks had not been removed. They were afterward cashed by Miss Noble.

The ladies obtained the number of defendants' automobile license plate and reported the theft to the authorities. The defendants were apprehended and tried by jury as previously stated. At the trial the defendants were positively identified. Bell, the driver of the car, was seen to raise the hood of defen-

dants' car and pretend to be looking for engine trouble while his companion, Quiel, procured the purse from the Ford sedan. There were no other vehicles or people in that vicinity at that time. The jury was justified in assuming that the defendants stopped their machine close to the parked Ford sedan with the intention of stealing something from that car, and that the driver raised the hood of his own machine to deceive any chance observer, while Quiel proceeded to steal the purse. The undisputed evidence is that Quiel was seen reaching into the Ford sedan in the very place where the purse was left by the owner. It is immaterial that the purse was subsequently thrown to the street and that the bank checks had not been taken from it. The theft of the purse and its contents was consummated the moment Quiel unlawfully took them from the seat of the automobile with the intention of depriving the owner thereof. The evidence supports that theory. The fact that the purse was immediately thrown upon the street may merely indicate that Quiel opened the purse and concluded the contents were of insufficient value to carry away, or his knowledge of the fact that he had been discovered in the very act of stealing the purse may have led him to throw it down and hasten to escape from the scene of the theft. The jury found in effect that they intended to and did steal the purse and its contents. We may not interfere with that conclusion.

█   There was adequate evidence that the bag and its contents were of sufficient intrinsic value to constitute petty larceny. It was only necessary to show that the things which were taken possessed some intrinsic value. (36 C.J. § 7, p. 736.) The evidence shows that the purse contained two bank checks for specified amounts which were afterward cashed for their face value, some "cash" or "change" and cosmetics. The term "cash" means money. The term "change" means "money of small denomination." (Webster's New International Dict. (2d ed.), p. 449.) █   The value of money and coin of the United States, being fixed by law, renders their production at the trial or parol evidence of their identity sufficient proof of their value. (36 C.J. § 491(c), p. 909.) █   Proof of unpaid bank checks of specified amounts is sufficient evidence of values of the sums "which in any contingency might be collected thereon." (Pen. Code, § 492.) The evidence in this case shows that the checks were subsequently cashed for their face values.

█ Asportation of the purse and its contents was sufficiently shown in the present case. They were taken from the possession of Miss Noble, the owner thereof, with the intent to steal them. Having been left by the owner on the seat of the car in which she was riding, they must be deemed to have been under her control and therefore in her possession so as to render them subject to theft. (*State* v. *Russo*, 127 Me. 313 [143 A. 99] ; 33 Words & Phrases (Perm. ed.), 106.) In the case last cited it is held that possession of goods by the owner thereof is not limited to actual custody on the person, but may include things of intrinsic value taken by a thief from any place where they were *under control of the owner*. █ Asportation within the meaning of the statute prohibiting theft may·be fulfilled by wrongfully and unlawfully removing property from the possession or control of the owner, against his will with the intent to steal it, even though the property may be retained by the thief but a moment. (*People* v. *Meyer*, 75 Cal. 383 [17 P. 431] ; *People* v. *Dukes*, 16 Cal.App.2d 105 [60 P.2d 197] ; 15 Cal.Jur. § 11, p. 905; 144 A.L.R. 1385, note.) █ The fact that the thief is frustrated in his attempt to carry stolen property away, or that he may change his mind immediately after the theft, because he concludes that the property is of insufficient value to warrant him in retaining it, does not relieve him of the consequence of the theft. In the Dukes case, *supra*, the defendant was discovered in the living room of a house, and hearing an unusual disturbance the owner opened the door and saw a typewriter, which had evidently fallen from its case, land "on the cement walk." It was there held that asportation of the machine was accomplished. The judgment of conviction was affirmed. The implied finding of the jury in the present case was to the same effect.

█ The court did not err in denying appellant's motion for new trial on the ground of prejudicial misconduct. That motion was based on the affidavit of his attorney, which merely averred that during a period of recess in the progress of the trial, the attorney observed "the chief investigator of the District Attorney's office in earnest and secret conversation with one of the jurors." The name of that juror was not mentioned. The subject of that conversation is not disclosed. No showing of an improper or prejudicial conversation was made. We may not presume the investigator was not properly discussing

some subject with the juror which had no relation to the case on trial. There is no rule of law prohibiting an investigator, or any other person, from discussing with a juror during a recess of court in the progress of a trial any proper subject not related to the trial in progress. (*People* v. *Phelan,* 123 Cal. 551, 567 [56 P. 424]; *People* v. *Perez,* 19 Cal.App.2d 472, 480 [65 P.2d 1319]; *People* v. *Murphy,* 92 Cal.App. 729 [268 P. 927]; Pen. Code, § 1122.) ██ Moreover, the defendant waived his charge of alleged misconduct since his attorney had knowledge of the fact that the investigator talked with a juror during a recess while the case was in progress of trial, and failed to call the court's attention to that fact until after the verdict had been rendered. A defendant or his attorney, who possesses knowledge, during the progress of a trial, of the conduct of jurors which he deems to be prejudicial, may not fail to call the court's attention thereto, speculate upon receiving a favorable verdict, and then assign the conduct as prejudicial misconduct for the first time after an adverse verdict has been returned against him. (*People* v. *Browning,* 132 Cal.App. 136, 142 [22 P.2d 784]; *Sheehan* v. *Hammond,* 2 Cal.App. 371, 374 [84 P. 340]; 8 Cal.Jur. § 418, p. 388; 23 C.J.S. § 1387, p. 1064; 96 A.L.R. 530, note.)

██ Upon conviction of petty larceny and a prior conviction of a felony, the trial judge has a discretion, under section 667 of the Penal Code, to sentence the defendant to imprisonment in either the county jail or in the state prison. We may not interfere with that discretion on this appeal. ██ The statute is not unconstitutional on the theory that it provides for cruel, unusual or excessive punishment. The additional penalty is considered punishment for the last offense. It has been uniformly held that such statutes do not result in punishing one twice for the same offense. It has been determined that the penalty is not unusual, cruel or excessive. (*In re Rosencrantz,* 205 Cal. 534 [271 P. 902]; *People* v. *Stratton,* 136 Cal.App. 201, 209 [28 P.2d 695]; *In re Rogers,* 20 Cal. App.2d 397, 402 [66 P.2d 1237]; 116 A.L.R. 211, note; 82 A.L.R. 349, note.)

The judgment and the order are affirmed.

Adams, P. J., and Peek, J., concurred.