Filed 5/19/16  Caretto v. Superior Court CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAUL ANTHONY CARETTO, | B265256 |
| Petitioner, | (Los Angeles County Super. Ct. No. BA384603) |
| v. | |
| THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, | |
| Respondent; | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  William N. Sterling, Judge.  Petition denied.

Ronald L. Brown, Public Defender of Los Angeles County, Albert J. Menaster, Olivia Sula-Wang, and Mark Harvis, Deputy Public Defenders for Petitioner.

No appearance for Respondent.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey, Supervising Deputy Attorney General, and Mary Sanchez, Deputy Attorney General for Real Party in Interest.

## INTRODUCTION

Petitioner Paul Anthony Caretto challenges by petition for writ of mandate the trial court's denial of his petition for resentencing pursuant to Penal Code section 1170.18.[1] He contends his conviction for receiving stolen property under section 496 has been reclassified as a misdemeanor because the value of the two stolen debit cards found in his possession, which he did not use, is less than $950. He argues the trial court erred in valuing the debit cards according to the amounts in the victim's bank accounts linked to the cards. We disagree and deny the petition.

## PROCEDURAL BACKGROUND AND FACTS

Petitioner was initially charged with attempted robbery under section 211, acquisition of access card account information under section 484e, subdivision (d), and receiving stolen property under section 496 – a driver's license and two debit cards. He was also charged with possession of methamphetamine under Health and Safety Code section 11377.

On May 10, 2011, petitioner was detained by the police in connection with an attempted robbery investigation. When petitioner was searched, the police found methamphetamine. The police also found two stolen debit cards and a stolen driver's license, all in the name of the victim, Carlos Varela. The police questioned petitioner and he denied ever using the debit cards. At the end of the preliminary hearing the magistrate dismissed the robbery and acquisition of access card account information charges based upon insufficiency of evidence.

On August 22, 2011, petitioner pled no contest to the remaining charges and admitted three one-year prison prior allegations pursuant to section 667.5, subdivision (b), that were added in the amended information. Petitioner was sentenced to four years in prison and execution of the sentence was suspended. Petitioner was granted four years of probation but never saw his probation officer and was later caught with burglary tools.

---

[1]     All Code references are to the Penal Code unless otherwise indicated.

On May 7, 2015, petitioner appeared for a probation violation hearing. The trial court appointed a public defender and suggested that a motion to reduce the charges under Proposition 47 might be appropriate. The next day petitioner filed a one-page motion asking that the two charges for which he was convicted be reduced to misdemeanors under Proposition 47. While he alleged the value of the stolen property was less than $950, he did not identify the stolen property nor attach a declaration or other evidence showing the value of the stolen property did not exceed $950.

During the May 21, 2015 hearing, the People opposed the motion arguing the value of the stolen debit cards was the amount of funds available in the linked bank accounts. Petitioner's counsel disagreed and argued the value was the intrinsic value of the plastic cards themselves. (Ex. F at p. 127.) The court asked for further briefing on the issue of how to determine the value of bank debit cards. The trial court suggested the prosecutor attempt to contact the victim to ascertain whether the bank debit cards were "valid." The trial court stated that, although it was the defense's burden to prove that the value of the debit cards was less than $950, it wanted the parties to "cooperate." There was no discussion on resentencing of petitioner's conviction for possession of methamphetamine under Health and Safety Code section 11377, subdivision (a).

On June 4, 2015, the trial court indicated it made no sense whatsoever that the value would be limited to the plastic making up the card, and that petitioner (as the moving party) had the burden to show the value was under $950. The trial court stated its belief that the value of each debit card should be based on the amount of money in the "appropriate account." The court also indicated that if the parties uncovered facts showing the cards were inactive, then the court would reduce the charge to a misdemeanor and resentence accordingly. The court stated that if the evidence showed there was an ability to use the cards to withdraw over $950, then the motion would be denied. The court again continued the hearing to allow the parties to locate the victim.

On the June 17, 2015, the parties appeared once more and the People provided the court with an email from the detective who had originally investigated the case and now had located the victim. The victim told the detective that the amount he had available for

withdrawal on the two debit cards was between $1,500 and $1,800 (from Bank of America and Chase Bank). Petitioner's counsel argued that the value of the cards was "not necessarily the value of the plastic itself, but actually any loss that would determine the value as opposed to a potential and hypothetical amount that could have been taken." The court responded, "[T]he court is finding that loss would only be relevant as a determining factor as to restitution. But in terms of Prop 47, the value of the card to me – I mean if someone has a card worth $2,700 and its stolen and someone receives it, then the value for receiving stolen property is the value of the card at the time . . . ." The court once again continued the hearing to determine if the parties could obtain any documentation from the victim supporting the detective's email. But the court said, "If [the prosecutor] establishes the value is over $950, the amount that could be drawn over, you'll have to have the Court of Appeal tell me I'm wrong."

On June 22, the trial court denied petitioner's resentencing motion in its entirety. Petitioner admitted violation of probation and it was revoked. The court then scheduled a sentencing hearing. Once again, there was no discussion on petitioner's request for resentencing of the drug possession conviction.

Petitioner filed a petition for writ of mandate challenging the trial court's valuation for his receiving stolen property conviction, as well as the court's failure to reduce his felony conviction for possession of methamphetamine to a misdemeanor. We issued an alternative writ of mandate as to the trial court's denial of petitioner's motion for resentencing of his drug possession conviction. In response, the trial court vacated its ruling as to the drug possession conviction and granted the petition. We then dismissed the petition as moot and petitioner sought review as to the trial court's denial of resentencing of his section 496 conviction. Our Supreme Court granted review and transferred the matter to us with directions to vacate our order and issue an order directing respondent court to show cause why the relief sought in the petition should not be granted. We issued the order to show cause, the People filed a return, and petitioner filed a reply.

4

**DISCUSSION**

*1.    Proposition 47*

Proposition 47 amends various provisions of the Penal and Health and Safety Codes to reduce personal possession drug offenses and thefts involving less than $950 from a straight felony or a "wobbler," to a straight misdemeanor.

Proposition 47 created a new resentencing provision, section 1170.18, subdivision (a), which provides:  "A person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('the act') had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5a, 473, 476a, 490.2, 496, or 666 of the Penal Code, as those sections have been amended or added by this act."  (§ 1170.18, subd. (a).)

Section 496 was amended by Proposition 47, and provides, in relevant part: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.  However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year . . . ."  (§ 496, subd. (a).)

A defendant seeking resentencing under section 496 has the burden of proving he or she is eligible for resentencing by demonstrating the value of the stolen property did not exceed $950, including attaching to the petition information or evidence necessary to enable the court to determine eligibility.  (*People v. Perkins* (2016) 244 Cal.App.4th 129, 135; see also *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 449 [defendant has

burden of establishing that value of property taken did not exceed $950]; *People v. Sherow* (2015) 239 Cal.App.4th 875, 880 ["it is entirely appropriate to allocate the initial burden of proof to the petitioner to establish the facts upon which his or her eligibility is based"]; *People v. Contreras* (2015) 237 Cal.App.4th 868, 892 ["The trial court's decision on a section 1170.18 petition is inherently factual, requiring the trial court to determine whether the defendant meets the statutory criteria for relief," including whether the value of the property involved was less than $950].)

*2.      Valuation of the Stolen Debit Cards*

The central issue in this case is whether, based upon the evidence before it, the trial court properly valued the victim's two debit cards found in petitioner's possession for the purpose of determining whether petitioner demonstrated he was qualified for resentencing. Petitioner contends the trial court erred because a debit card has only the minimal, intrinsic value of its plastic, which would obviously be under the $950 threshold required by section 496 for a felony conviction. The People argue the trial court did not err because case law indicates stolen property should be valued based on its fair market value, which in this case was properly determined by the only evidence before the court – the victim's statement that the combined accounts connected to the debits cards had over $950 in them. We conclude the People have the better argument.

While amended section 496 does not specify how the $950 threshold is determined, "[t]he means of valuing stolen property is settled under the theft statutes. . . [¶] Penal Code section 484 defines theft. In doing so, it states: 'In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test, . . .'" (*People v. Swanson* (1983) 142 Cal.App.3d 104, 107 [holding the value of stolen property for purposes of a section 12022.6 enhancement is the fair market value of that property, and also concluding, "While the statute limits itself by saying it is 'for the purposes of this section,' no actual reason exists for applying a different test for section 12022.6 from that described in section 484"].) Like the court in *People v. Swanson*, we conclude there is no reason to apply a different test to section 496, which is also part of the theft statutes. (See *People*

6

*v. Gopal* (1985) 171 Cal.App.3d 524, 541 [section 496 encompasses the receipt or possession of articles obtained by theft. Anything that can be the subject of theft can also be property under section 496]; *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1048 [the court used section 484 to interpret section 496].)

The "fair market value" means the highest price obtainable in the market place rather than the lowest price or the average price. (*People v. Pena* (1977) 68 Cal.App.3d 100, 104; see also *People v. Tijerina* (1969) 1 Cal.3d 41, 45 ["In the absence of proof . . . that the price charged by a retail store from which merchandise is stolen does not accurately reflect the value of the merchandise in the retail market, that price is sufficient to establish the value of the merchandise"]; *People v. Lizarraga* (1954) 122 Cal.App.2d 436, 438 ["'The value to be placed upon stolen articles for the purpose of establishing a felony charge is the fair market value of the property and not the value of the property to any particular individual'"]; *People v. Cook* (1965) 233 Cal.App.2d 435, 438 [clothing stolen from a department store is to be valued by its fair market value not its special value of the property to any particular individual]; *People v. Williams* (1959) 169 Cal.App.2d 400, 403 [value of men's suits stolen from store was the fair market value, as testified to by sales clerk of store].)

The drafters of the Proposition 47 are deemed to have been aware of this existing and well-established case law and, as such, would have been aware that the accepted means of valuing stolen property is the fair market value test. (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283.) This conclusion is supported with the Act's purpose to require misdemeanors for "petty theft." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70 ["In enacting this act, it is the purpose and intent of the people of the State of California to . . . [r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft . . . ."].)

Petitioner's argument that the trial court erred is premised on his view that the threshold $950 value amount stated in section 496 corresponds not to the amounts linked to the stolen debit cards but rather to the intrinsic value of the cards, the plastic itself where the account information is inscribed. In other words, rather than seeking to place

7

the highest value on the stolen debit cards, petitioner seeks to divorce the cards from the bank accounts to which they are linked and from the purpose for which the cards were made – to withdraw cash or purchase goods or services. Based upon the above theft valuation cases, we believe the value of the stolen debit cards, for purposes of resentencing under section 496, can realistically be determined by reference to the amounts in the specific bank accounts which the cards are designed to access and which are available for withdrawal.

The only evidence presented to the trial court in this case was the victim's statement to the original investigating detective that he had a combined total of $1,500 to $1,800 in the two bank accounts linked to the debit cards. At no time did petitioner challenge this evidence or present any independent evidence of his own. (See Evid. Code, § 813, subd. (a)(2) [owner of personal property is qualified to opine about its value]; *People v. Henderson* (1965) 238 Cal.App.2d 566, 566-567 [owner of stolen watch could testify as to the worth of stolen watch for purposes of determining whether defendant was guilty of grand theft]; *People v. Haney* (1932) 126 Cal.App. 473, 475-476.) Not only was the trial court entitled to rely upon the victim's statement of value in determining whether petitioner was eligible for resentencing, but absent petitioner presenting any other evidence of the stolen debit cards' fair market value we cannot say the trial court erred in essentially concluding petitioner had failed to meet his burden of proof that he was entitled to resentencing.

In arguing the trial court erred, petitioner relies upon *People v. Cuellar* (2008) 165 Cal.App.4th 833 (*Cuellar*), *People v. Sanders* (1998) 67 Cal.App.4th 1403 (*Sanders*), and *People v. Quiel* (1945) 68 Cal.App.2d 674 (*Quiel*), which we believe are distinguishable. In *Cuellar*, when the defendant tried to pay for goods with a forged check the sales clerk became suspicious and brought the check to the back office, the defendant went to the office and grabbed the check from her hand. (*Cueller*, *supra*, 165 Cal.App.4th at p. 835.) He was convicted of grand theft from the person under section 487, subdivision (c), and challenged the conviction on the ground the forged check had no intrinsic value, which he argued was required for a conviction of grand theft. (*Id*. at p. 836.) The appellate

court found that even though the value of the forged check was a "nullity," the jury could reasonably infer the false check had intrinsic value by virtue of the paper it was printed on. (*Id*. at pp. 838-839.) In doing so, it relied on other cases upholding theft charges for items with minimal intrinsic value. (*Id*. at p. 839.)

*Cuellar* is not helpful for at least two reasons. First, unlike the forged check in that case, which the court declared a "nullity," the debit bank accounts here appeared to be valid, and if accessed, held cash over $950. (Cf. *United States Rubber Co. v. Union Bank & Trust Co.* (1961) 194 Cal.App.2d 703, 708 [check did not have value because it "was never rightfully endorsed and was not a bearer instrument . . ."].) *People v. Caridis* (1915) 29 Cal.App. 166, upon which *Cuellar* relied, is distinguishable for the same reason. In that case the court stated that a stolen winning lottery ticket for an illegal lottery had no validity or value "in the eye of the law," but as a mere piece of paper had "some slight intrinsic value" to support petit larceny. (*Caridis,* at p. 169; see also 2 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012), Crimes Against Property, § 22, p. 47 [*Cardis* does "not stand for the proposition that illegally possessed property of substantial value cannot be the subject of larceny"].)

Second, the structure of Proposition 47 suggests that the "value" of a check is determined by its face value, not its intrinsic value as a piece of paper. Forgery of a check with a "value" under $950 is now a misdemeanor. (§ 473, subd. (b).) And that value is determined by its *face value*. (*People v. Franco* (2016) 245 Cal.App.4th 679, 684 [the value of forged checks under section 473, subdivision (b), "must correspond to the stated value or face value of the check in order to avoid absurd consequences"].) If the value of a forged check is a "nullity," as stated in *Cuellar*, the $950 limitation on felony charging of check forgery would be meaningless, as it is impossible to conceive of a situation where a check would have a high enough intrinsic value to warrant a felony charge. For these reasons, *Cueller* is distinguishable.

In *Sanders*, the defendant was convicted of ten counts of grand theft by forging and recording deeds to real property. (*Sanders*, *supra*, 67 Cal.App.4th at p. 1405.) The appellate court reversed the convictions for theft of real property as neither uttering nor

9

recording forged deeds is theft "for the reason that nothing is taken: A forged deed does not convey title to its immediate grantee." (*Id.* at p. 1409, fn. 9.)  But as with the forged check in *Cueller*, the forged deeds in *Sanders* are not like the valid debit accounts in the instant case.

The valid debit cards are similar to the valid "bank checks" made payable to the victim in *Quiel, supra,* 68 Cal.App.2d 674.  The appellate court in *Quiel* held that "[p]roof of unpaid bank checks of specified amounts is sufficient evidence of values of the sums 'which in any contingency might be collected thereon.' [Citations.]  The evidence in this case shows that the checks were subsequently cashed for their face values." (*Id.* at p. 678.)  The court affirmed the defendant's petty theft conviction.  Likewise, evidence of stolen but otherwise valid debit cards, which in "any contingency" might allow access to the debit accounts' contents, is sufficient evidence (along with the victim's opinion testimony as to the amount of money in those accounts) of the value of the accounts.

Petitioner also cites sections 484e, 484g, and 484h, for the proposition that "mere use" of access cards is not valued based upon the amount of money in the victim's bank account.[2]   The answer, of course, is that petitioner was not convicted of violating those sections.  He was convicted of violating section 496, under which, as already discussed, the value of the stolen property is based on its fair market value, which here was appropriately determined by the only evidence presented to the trial court.

Petitioner urges that we follow the recent decision in *People v. Thompson* (2015) 243 Cal.App.4th 413.  However, since our request for supplemental briefing on the case, the California Supreme Court granted review of it on March 9, 2016.  As a result, we now

---

[2]    For example, section 484e, subdivision (d), provides: "Every person who acquires or retains possession of access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently, is guilty of grand theft."  An "'Access card' means any card . . . that can be used . . . to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds . . . ." (§ 484d, subd. (2).)

decline to address the opinion.  (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 109 ["it is a well-established principle of law that a grant of review by the Supreme Court nullifies the opinion and causes it to no longer exist."].)

## DISPOSITION

The petition is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

BIGELOW, P. J.

We concur:

FLIER, J.

GRIMES, J.

11