[No. B102795. Second Dist., Div. Three. Nov. 24, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
WESLEY SANDERS III, Defendant and Appellant.

[No. B123833. Second Dist., Div. Three. Nov. 24, 1998.]

In re WESLEY SANDERS III on Habeas Corpus.

1404

**COUNSEL**

Edward J. Horowitz for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Margaret E. Maxwell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GOODMAN, J.*—**

### INTRODUCTION

Wesley Sanders III caused to be recorded in the real property records of Los Angeles County 10 forged deeds purporting to convey to him title to 11 parcels of real property. Charged with and convicted of 10 counts of "grand theft of real property" (Pen. Code, § 487),[1] Sanders appeals from the judgment entered after his conviction of those offenses by jury trial, the jury's finding true the allegations of losses in excess of $50,000 each as to three counts, and its finding true the allegation that the cumulative loss was in

*Judge of the Municipal Court for the Culver Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]Subsequent unspecified statutory references are to the Penal Code.

excess of $150,000 and resulted from a common plan or scheme. (§ 12022.6, subd. (b).)[2]

Sentenced to state prison for five years,[3] Sanders appeals from the judgment and has filed a petition for writ of habeas corpus. We find meritorious the contention that the prosecution failed to establish an essential element of its case and reverse the judgment. The writ is denied as moot.

### FACTUAL AND PROCEDURAL BACKGROUND

For resolution of the issue dispositive of this appeal, the facts common to the 10 counts of grand theft of real property may be briefly stated " ' ". . . in a light most favorable to respondent and presum[ing] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People* v. *Rayford* (1994) 9 Cal.4th 1, 23 [36 Cal.Rptr.2d 317, 884 P.2d 1369], quoting from *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) So stated, the facts establish that in the months of December 1991 through February 1992, 10 forged deeds were recorded in the office of the Los Angeles County Recorder. Sanders, or someone acting on his behalf, paid the fees necessary to record each of these deeds. Sanders was the sole grantee of each

---

[2]The information, and verdicts, are summarized in the following table:

| COUNT | CHARGE/ ENHANCEMENT | VICTIM | VERDICT/FINDING |
|---|---|---|---|
| 1 | 487, former subd. 1 12022.6, subd. (a) | Aberdeen | Guilty True (>$50,000) |
| 2 | 487, former subd. 1 12022.6, subd. (a) | Louis/Poulson | G T |
| 3 | 487, former subd. 1 | Biller | G |
| 4 | 487, former subd. 1 | Lockridge | G |
| 5 | 487, former subd. 1 | Mittelstadt | G |
| 6 | 487, former subd. 1 | Lee | G |
| 7 | 481, subd. (1) 12022.6 | Stinnett | G T (>$50,000) |
| 8 | 487, former subd. 1 | Meris | G . |
| 9 | 487, former subd. 1 | Robinson | G |
| 10 | 487, former subd. 1 | Ortiz | G |
| ALL | 12022.6, subds. (b) and (d) | | T ($150,000/from common scheme or plan) |

The information alleges, and the verdict forms indicate the facts establish, violations of both section 12022.6, *subdivision (b)* and section 12022.6, *subdivision (d)*. During the relevant time period there was no section numbered 12022.6, *subdivision (d)*.

[3]The trial court sentenced Sanders to serve three years in state prison on count one, and two additional years for one section 12022.6, subdivision (b) enhancement. The trial court also imposed and stayed sentences on counts two through ten pursuant to section 654.

conveyance. Had they been authentic, these deeds would have effected transfer of title to 11 parcels of real property to Sanders.[4]

The grantors of six of the parcels had died prior to the date each purportedly signed the deed conveying his or her particular parcel to Sanders. The other purported grantors (in one case, the grantor's adult child) testified their signatures had been forged. The notaries public whose signatures and notarial seals appeared on the deeds denied notarizing the deeds.

An example of the acts committed as to a specific parcel and count follows. Maggie and Clem Lockridge acquired certain real property in Los Angeles County in 1949. Maggie died in 1973; Clem passed away in 1977. Property taxes became delinquent within two years. This parcel was scheduled to be sold by the Los Angeles County Treasurer-Tax Collector in its February 1992 sale.

The facts that a property owner is delinquent in paying taxes and that the property will be sold at public sale are public records and the subject of public notice, including publication in a book, which is made available to the public several months prior to the scheduled sale. Individuals interested in such sales may register as bidders for those sales. Sanders was registered for the 1992 sale, scheduled to be conducted in February of that year.

On December 31, 1991, a deed quitclaiming the Lockridge property to Sanders was recorded in Los Angeles County real property records. The deed, dated December 24, 1991, contained purported signatures of both Clem and Maggie, and bore the acknowledgment of a notary public as having been signed by Clem and Maggie on December 24, 1991. The transfer taxes and fees associated with recording the deed were paid by check drawn on Sanders's bank account. Although the seal and purported signature of a notary public appeared on the deed, the notary denied notarizing the deed and had no record of the notarization in her notary book. On January 31, 1992, Sanders "redeemed" this parcel by paying the delinquent taxes which totaled $10,048.47.[5]

The Los Angeles County Treasurer-Tax Collector asked the sheriff to conduct an investigation of deeds recorded by Sanders. Sheriff's Detective

---

[4]One count alleged grand theft of two parcels of real property.

[5]Sanders, or someone acting on his behalf, had "redeemed" the properties owned by five of the alleged victims by paying the delinquent taxes on those parcels. The Los Angeles County Treasurer-Tax Collector prepares a certificate of redemption for each parcel of real property scheduled for sale for nonpayment of taxes. Each parcel scheduled for such a sale may be "redeemed" by anyone who pays the back taxes, even by a nonowner. On payment of the amount due, the Treasurer-Tax Collector issues a certificate of redemption. That certificate does not convey title. (*Potter* v. *County of Los Angeles* (1967) 251 Cal.App.2d 280, 286 [59

Joan Horne spoke to Sanders by telephone twice in the course of that investigation. During the second such conversation Sanders told her: "Well, I don't know how you can do that. I can only count nine. I gave one of those properties back."[6] Later in the same conversation Sanders advised her: "[T]he only mistake I made was in filing the documents. I could have just kept the properties in my name for five years and not filed and there wouldn't have been any problem."

Substantial evidence was introduced at trial that Sanders had recorded quitclaim deeds to himself on parcels in addition to the 10 deeds which were alleged in the information as acts of grand theft.[7] These deeds, recorded in 1986 and 1987, also bore forged signatures of their grantors, some of them deceased. Other evidence was introduced that in 1993 Sanders, posing as Oscar Joshua, Jr., tried to sell another parcel of real property on which delinquent taxes had been paid by an associate of Sanders. A deed purporting to convey this parcel bore the signature of the long-deceased Oscar Joshua, Sr. That deed had been notarized by Sanders.

Sanders was arrested and charged with grand theft of real property (§ 487, former subd. 1) as to each recorded deed. The jury rejected Sanders's defense that he had been a victim himself of the machinations of another person. He was convicted of all charges at the second trial. This appeal and the accompanying writ followed.

## CONTENTIONS

Sanders contends in his appeal (1) the judgment must be reversed as the prosecution charged Sanders only with a crime which he did not commit; (2) the trial court committed prejudicial error by (a) admitting evidence of uncharged acts and (b) instructing the jury that Sanders could be found guilty as an aider and abettor; and (3) assuming, arguendo, the correct offense was charged, there was insufficient evidence upon which to convict on specified counts.

Cal.Rptr. 335]; 2 Ehrman, Taxing Cal. Property (3d ed. 1997) § 29.17 et seq.; see Rev. & Tax. Code, § 4101 et seq.)

[6]Sanders's statement was a reference to the Poulson/Louis deed which purported to transfer property from Marjorie Y. Louis, also known as Norman Poulson, to Sanders. Although Poulson had died in 1989, Poulson (under the name Louis) purportedly signed a quitclaim deed on December 23, 1991, conveying real property to Sanders, who had that deed recorded on December 26, 1991. Unknown to Sanders, Poulson's son paid the back taxes in January 1992. When Sanders became aware of that payment, he reconveyed the property to the long-deceased Poulson later that month. Sanders wrote on that reconveyance, "Property was transfer [sic] without owner [sic] consent. This conveyance in-lieu [sic] of a court-order [sic] or decree that is not pursuant to sale."

[7]Consideration of the objections to introduction of this evidence is not necessary to the decision in this case.

## DISCUSSION

### 1. *Sanders's conduct did not constitute grand theft of real property as that crime is defined in the Penal Code.*

Sanders was convicted of 10 counts of grand theft of real property in violation of section 487, former subdivision 1 based on his causing to be recorded in Los Angeles County real property records 10 deeds bearing forged signatures of their purported grantors and forged notarial information.[8] Each of these forged deeds purported to convey title to real property to Sanders. The prosecution's theory was that Sanders committed the crime of theft of real property by "stealing" the parcels of real property. This he did by recording the fraudulent deeds.[9]

The evidence clearly established that Sanders caused the fraudulent deeds to be recorded in Los Angeles County real property records and that each of

---

[8]The 10 counts contained virtually identical allegations. For example, count four alleged: "On or about December 31, 1991, in the County of Los Angeles, the crime of GRAND THEFT OF REAL PROPERTY, in violation of PENAL CODE SECTION 487[, subdivision 1], a Felony was committed by Wesley Sanders, III, who did willfully and unlawfully take certain real property, to wit, 2213 HATCHWAY STREET, COMPTON, of a value exceeding Four Hundred Dollars ($400), the property of CLEM AND MAGGIE LOCKRIDGE."

The information did not allege a violation of any other substantive offense.

Among the array of criminal offenses which might have been considered by the prosecution to be charged based on the conduct alleged in the information were the following:

Section 115—offering a false or forged document for recording (felony);

Section 470—forgery (felony-misdemeanor);

Section 531—party to fraudulent conveyance (misdemeanor); and

Section 531a—filing fraudulent conveyance (misdemeanor).

The punishment for each of the listed felonies is identical to that for the crime charged, viz., sixteen months or two or three years in state prison.

A penalty enhancement for recording a false deed is prescribed by section 115.5. (See *People* v. *Gangemi* (1993) 13 Cal.App.4th 1790 [17 Cal.Rptr.2d 462].) Sanders was charged with penalty enhancements under section 12022.6. At the relevant time, that section provided for an additional year in state prison if the value of a "taking" exceeded $25,000, and an additional two years if the value of the taking exceeded $100,000.

We do not suggest that the facts would have established all the elements of each of the listed offenses or that any particular offense would be the sole appropriate charge.

[9]The prosecution's theory is succinctly stated in the modified version of CALJIC No. 14.02 which it requested and with which the trial court instructed the jury. The full text of that instruction is set out, *post*, at pages 1412-1413.

As will be discussed in the text, *post*, the prosecution misperceived the gravamen of the crime of grand theft of real property. Neither uttering, nor recording of the forged deeds was theft for the reason that nothing was taken: A forged deed does not convey title to its immediate grantee. (*Firato* v. *Tuttle* (1957) 48 Cal.2d 136, 139 [308 P.2d 333]; *Bryce* v. *O'Brien* (1936) 5 Cal.2d 615, 616 [55 P.2d 488]; *Trout* v. *Taylor* (1934) 220 Cal. 652, 656 [32 P.2d 968]; *Fallon* v. *Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1105 [215 Cal.Rptr. 748]; *Wutzke* v. *Bill Reid Painting Service, Inc.* (1984) 151 Cal.App.3d 36, 43-44 [198 Cal.Rptr. 418].)

those deeds purported to convey real property to Sanders. There was sufficient substantial evidence that Sanders engaged in the *acts* alleged in the information.

 Sanders's contention, however, is that he was convicted of the wrong *offense*; that his conduct did not constitute grand theft of real property. (§ 487, former subd. 1.) He argues his conduct may constitute the crime of offering a forged deed for recording as proscribed by section 115, subdivision (a),[10] and that the doctrine that a specific statute controls over a general statute precludes his prosecution under the general statute, here that of grand theft (§§ 484, subd. (a) and 487, former subd. 1). An alternate articulation of Sanders's contention is that the prosecution failed to prove an essential element of the charged crime.

Respondent asserts sections 115, subdivision (a), 484, subdivision (a) and 487, former subdivision 1 address different conduct and have different elements, making conviction under the theft statute appropriate.[11]

a. *Analysis of sections 487, former subdivision 1 and 484, subdivision (a).*

We begin our discussion of these issues with analysis of the question: Was Sanders's conduct grand theft of real property? We do so based upon familiar rules of statutory construction: We give the words of a statute their usual and ordinary meaning. (*People* v. *Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; *Alexander* v. *Superior Court* (1993) 5 Cal.4th 1218, 1226 [23 Cal.Rptr.2d 397, 859 P.2d 96].) If there is no ambiguity in the language, we presume the Legislature meant what it said and that the plain meaning of the statute governs. (*People* v. *Snook, supra; People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d

---

[10]Section 115 provides in pertinent part: "(a) Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony. [¶] (b) Each instrument which is procured or offered to be filed, registered, or recorded in violation of subdivision (a) shall constitute a separate violation of this section. [¶] (c) Except in unusual cases where the interests of justice would best be served if probation is granted, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any of the following persons: [¶] . . . [¶] (2) Any person who is convicted of more than one violation of this section in a single proceeding, with intent to defraud another, and where the violations resulted in a cumulative financial loss exceeding one hundred thousand dollars ($100,000). [¶] (d) For purposes of prosecution under this section, each act of procurement or offering a false or forged instrument to be filed, registered, or recorded shall be considered a separately punishable offense."

[11]In its response to the court's request for additional briefing, respondent conceded Sanders's conduct "does not fit neatly into the category of theft by false pretenses."

1232], cert. den. (1996) __ U.S. __ [117 S.Ct. 104, 136 L.Ed.2d 57].) In construing penal statutes we take note of the language of section 4: "The rule of the common law, that penal statues are to be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

The crime of grand theft of real property was defined in section 487, former subdivision 1, which provided: "Grand theft is theft committed in any of the following cases: [¶] 1. When the . . . real . . . property taken is of a value exceeding four hundred dollars ($400) . . . ."

Thus, to constitute *grand theft*, (1) there must be a *theft* of real property and (2) that theft must be of the requisite value.

■ Sanders does not contest the value of any of the properties; rather, he contends what he did does not constitute *theft of real property*. The questions to be resolved, therefore, are (1) whether the acts done come within the definition of the crime of "theft of real property" and (2) whether the prosecution established each of the elements of that crime.

The crime of theft of real property is defined in section 484, subdivision (a) and not in section 487; the latter merely establishes the threshold for the category of theft known as *grand* theft.

Section 484, subdivision (a) provides: "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of . . . real . . . property . . . is guilty of theft."[12]

■ Section 484, subdivision (a) defines the crime of *theft of real property by false pretense*.[13] Proof of this crime requires that the prosecution establish: (1) the defendant made a false pretense or representation; (2) he did so with intent to defraud the owner of the property; and (3) the owner was in fact defrauded. (§ 484, subd. (a); *Callan* v. *Superior Court* (1962) 204 Cal.App.2d 652, 668-669 [22 Cal.Rptr. 508].)

---

[12]The same section later provides: "For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any . . . property . . . received as a result thereof . . . ." This reference to "false or fraudulent representation or pretense" supports our conclusion in the text, *post*, that the relevant crime defined by section 484, subdivision (a) is theft of real property *by false pretense*.

[13]There was no such crime at common law for the reason that the common law precursor of theft, larceny, required asportation which is not possible with respect to real property. (See text, *post*, at p. 1415 et seq.)

Further, the false pretense or representation must have materially influenced the owner to part with his property, even though the false pretense need not be the sole inducing cause. (*Callan* v. *Superior Court, supra,* 204 Cal.App.2d at p. 669, quoting *People* v. *Ashley* (1954) 42 Cal.2d 246, 259 [267 P.2d 271], cert. den. (1954) 348 U.S. 900 [75 S.Ct. 222, 99 L.Ed. 70].)

■ The facts adduced at trial do not include any evidence that any pretense or representation was made to any of the purported grantors. Even though there is substantial evidence Sanders caused 10 forged deeds to 11 parcels of real property to be recorded in Los Angeles County real property records, there is no evidence he made any false representation. Sanders had no contact with any of the grantors; indeed, six of them had died prior to the dates on which their forged signatures were affixed to the deeds which were later recorded.

■ The prosecution has the obligation to produce evidence sufficient to prove each element of the crime charged beyond a reasonable doubt. A defendant has a legitimate interest in not being convicted on evidence that is insufficient to establish each element of the crime charged. (E.g., *In re Winship* (1970) 397 U.S. 358, 364 [90 S.Ct. 1068, 1072-1073, 25 L.Ed.2d 368] [the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged]; *People* v. *Cuevas* (1995) 12 Cal.4th 252, 270 [48 Cal.Rptr.2d 135, 906 P.2d 1290].) If the prosecution does not adduce proof of a necessary element of the crime charged, then that conviction must be reversed. The prosecution must meet its burden "no matter how compelling the People's evidence may be." (*People* v. *Jimenez* (1995) 33 Cal.App.4th 54, 61 [39 Cal.Rptr.2d 12].)

b. *Instructional error and burden of proof.*

In support of its theory that Sanders committed theft in violation of sections 484, subdivision (a) and 487, former subdivision 1 by forging and recording deeds to parcels of real property, the prosecution requested a modified version of CALJIC No. 14.02 which, as read to the jury, provided: "Defendant is accused in counts 1 through 10 of the information of having committed the crime of grand theft, a violation of section 487 of the Penal Code, which states: Every person who steals or takes the real personal [*sic*[14]] property of another with the specific intent to deprive the owner permanently of his or her property is guilty of the crime of theft, in violation of Penal Code 487.

---

[14]This apparent error was not in the written form of the instructions given to the jury. The written version of the instructions governs any conflict with oral instructions. (*People* v. *Osband* (1996) 13 Cal.4th 622, 717 [55 Cal.Rptr.2d 26, 919 P.2d 640].)

"In order to prove such crime, each of the following elements must be proved: A person took real property of some value belonging to another. When the person took such property, he had the specific intent to deprive the other person permanently of his or her property. And three, the person obtained the property by gaining title to the property for some period of time."

The text of this instruction does not correctly state the elements of the crime of theft of real property, which are set out and discussed, *ante*. Merely to state that the accused "gain[ed] title to the property for some period of time" misstates an essential element of this offense, viz., the obligation to establish material reliance upon a false representation. (*People* v. *Ashley, supra,* 42 Cal.2d at p. 259.)

Further, the instruction is based upon a faulty premise. ■ The recording of a forged deed does not convey title. (*Firato* v. *Tuttle, supra,* 48 Cal.2d 136, 139; *Bryce* v. *O'Brien, supra,* 5 Cal.2d 615, 616; *Trout* v. *Taylor, supra,* 220 Cal. 652, 656; *Fallon* v. *Triangle Management Services, Inc., supra,* 169 Cal.App.3d 1103, 1105; *Wutzke* v. *Bill Reid Painting Service, Inc., supra,* 151 Cal.App.3d 36, 43-44.) Thus, even if there were no obligation to establish that Sanders had made material false representations to each of the purported grantors, there would not have been a theft for the reason that the recording of a false deed does not convey title. Nor does the filing of such a deed combined with the redemption of the property by payment of back taxes convey title. (*Potter* v. *County of Los Angeles, supra,* 251 Cal.App.2d 280, 286 [59 Cal.Rptr. 335]; 2 Ehrman, Taxing Cal. Property, *supra,* § 29.17 et seq.; see Rev. & Tax. Code, § 4101 et seq.)

There are circumstances in which the giving of an instruction which omits necessary elements of an offense can be cured by reference to other instructions. (E.g., *People* v. *Olguin* (1994) 31 Cal.App.4th 1355, 1378 [37 Cal.Rptr.2d 596].) In cases alleging theft, a conviction may be affirmed if there is sufficient evidence to support a conviction on any theory of the crime of theft. (*People* v. *Counts* (1995) 31 Cal.App.4th 785, 793 [37 Cal.Rptr.2d 425].) ■ In this case, however, the facts established at trial, however compelling, do not establish the crime of theft of real property.

■ When the trial court's instructions fail to advise the jury of the elements of a charged offense, the judgment may be upheld only if "no rational jury could find the predicate acts but fail to find the fact presumed." (*Carella* v. *California* (1989) 491 U.S. 263, 267 [109 S.Ct. 2419, 2421, 105

L.Ed.2d 218].) As our Supreme Court stated in *People* v. *Cummings* (1993) 4 Cal.4th 1233 [18 Cal.Rptr.2d 796, 850 P.2d 1], certiorari denied (1994) 511 U.S. 1046 [114 S.Ct. 1526, 128 L.Ed.2d 219]: "These decisions make a clear distinction between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element. Moreover, none suggest that a harmless error analysis may be applied to instructional error which withdraws from jury consideration substantially all of the elements of an offense and did not require by other instructions that the jury find the existence of the facts necessary to a conclusion that the omitted element had been proved." (4 Cal.4th at p. 1315.)[15]

The prosecution cannot meet its obligation of proof in this case. Neither false representation made to any owner of real property, nor reliance upon any fraudulent representation made to such an owner, can be established. This failure of proof means the convictions for the offenses charged cannot stand, albeit that Sanders may be guilty of other, uncharged crimes.[16]

---

[15]We need not determine whether our Supreme Court would apply a harmless error analysis under its recent holding in *People* v. *Breverman* (1998) 19 Cal.4th 142, 173-174, 175-179 [77 Cal.Rptr. 2d 870, 890, 892-894] as this case presents more than an issue of an instructional error, viz., there was no evidence introduced to prove a necessary element of the charged offense. Under these circumstances, there was a failure of proof, mandating reversal. (*People* v. *Cummings, supra,* 4 Cal.4th 1233; *People* v. *Vincent* (1993) 19 Cal.App.4th 696, 702-703 [23 Cal.Rptr.2d 714]; see also *People* v. *Flood* (1998) 18 Cal.4th 470 [76 Cal.Rptr.2d 180, 957 P.2d 869].)

[16]In its letter brief and at oral argument, respondent suggested alternative theories of Sanders's culpability. Each is predicated upon Sanders having taken something of value from its true owner. Respondent suggested the forged deeds have intrinsic value as measured by the value of the real property which appeared in the public record to have been transferred by the forged deeds. This theory transmutes the 10 counts of grand theft of real property into an equal number of counts of theft of personal property in the form of an intangible interest of the true owners of the parcels in being free from clouds on their titles. In addition to due process concerns which arise from seeking to sustain the convictions on appeal on a starkly different theory, respondent mistakenly relies on section 492. That section provides: "If the thing stolen consists of any evidence of debt, or other written instrument, the amount of money due thereupon, or secured to be paid thereby, and remaining unsatisfied, or which in any contingency might be collected thereon, or the value of the property the title to which is shown thereby, or the sum which might be recovered in the absence thereof, is the value of the thing stolen."

Our research does not disclose a circumstance in which section 492 has been interpreted in the manner suggested. For section 492 to be applicable, there must be a theft of a written instrument *from another*. Here, Sanders did not take any tangible and valuable thing from any of the alleged victims. Further, it has been the law since *People* v. *Caridis* (1915) 29 Cal.App. 166 [154 P. 1061] that "theft" of a worthless item is not valued under section 492. (See also *People* v. *Sewall* (1928) 90 Cal.App. 476 [265 P. 1040]; *People* v. *Dadmun* (1913) 23 Cal.App. 290 [137 P. 1071].) As the deeds recorded in this case were worthless, and they were not taken from any of the victims, section 492 is inapposite.

c. *The development of the crime defined in section 484, subdivision (a).*

The history of the development of the crime of theft compels the conclusion which we reach. At common law there could be no theft of real property. The crime which we know of today as "theft" began as "larceny." Proof of larceny required, among other things, the asportation—or movement—of the thing, in addition to the taking of possession. (3 Wharton's Criminal Law (15th ed. 1995) Larceny, § 366, pp. 425-430.) Asportation is not possible with real property. (*People* v. *Dillon* (1983) 34 Cal.3d 441,457 [194 Cal.Rptr. 390, 668 P.2d 697], quoting *People* v. *Cummings* (1896) 114 Cal. 437, 440 [46 P. 284] ["[r]eal property under the English law was never the subject of [larceny]"] and citing Perkins, Criminal Law (2d ed. 1969) p. 234.)[17]

There did exist at common law the crime of fraudulent obtaining of title. That crime was an offense against *ownership* rather than against *possession.* Proof of that crime required proof of the *inducement of the owner* to part with title. (Perkins, Criminal Law (3d ed. 1982) ch. 4, pp. 307-308, 374-378.) To address the impact of such common law distinctions, since the late 1800s California has made criminal the recording of forged deeds. (See §§ 115, 531 & 531a, discussed, *ante,* fn. 8.) Neither a change of ownership, nor asportation is an element of any of these offenses. (E.g., *People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1061 [53 Cal.Rptr.2d 156], and cases cited.)

(1) *Prior to 1927—only larceny of personal property.*

From as early as 1856 until its amendment in 1927, section 484 did not proscribe the theft of *real property.* (Stats. 1856, ch. 139, p. 220; *People* v. *Rabe* (1927) 202 Cal. 409, 415 [261 P. 303].) Rather, section 484 defined the theft crime of *larceny* in the following manner: "Larceny is the felonious stealing, taking, carrying, leading, or driving away the *personal property* of another." (Italics added.)

Application of the pre-1927 statute is discussed, inter alia, in *People* v. *Meyer* (1888) 75 Cal. 383 [17 P. 431] and in *People* v. *Edwards* (1925) 72

---

[17]The other common law theft crimes were embezzlement and larceny by trick. Neither crime, even in its modern, statutory version, is cognizable on the facts of this case as there was no relationship, whether of trust, or otherwise, between the true owners of the several parcels and Sanders. Embezzlement requires proof of a relationship of trust and confidence (*People* v. *Wooten* (1996) 44 Cal.App.4th 1834, 1845 [52 Cal.Rptr.2d 765]), which is absent in this case. Larceny by trick requires a relationship between the perpetrator and the victim as well as the appropriation of property *from the victim,* which is absent in the instant case. (See *People* v. *Curtin* (1994) 22 Cal.App.4th 528, 531 [27 Cal.Rptr.2d 369]; *Buck* v. *Superior Court* (1965) 232 Cal.App.2d 153, 162 [42 Cal.Rptr. 527, 11 A.L.R.3d 1064], cert. den. (1965) 382 U.S. 834 [86 S.Ct. 77, 15 L.Ed.2d 77].)

Cal.App. 102 [236 P. 944], disapproved of on other grounds in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948]. The teaching of these cases confirms the plain meaning of section 484 prior to its amendment in 1927: the property taken must be personalty, there must be asportation of the item taken, and the taking must be against the will of the owner, or at least without his consent. (*People* v. *Edwards, supra,* at pp. 112-113.) Because the statute defined as criminal only the taking of personalty, and as both taking and asportation were required, real property could not have been the subject of prosecution for larceny under section 484 as the crime was then defined.

(2) *The 1927 amendments.*

In 1927, the Legislature made two significant amendments to section 484. First, it consolidated the offenses of larceny, larceny by trick, obtaining money by false pretenses, embezzlement, and related theft offenses, in section 484 as the single crime of "theft." (*People* v. *Cannon* (1947) 77 Cal.App.2d 678, 688-689 [176 P.2d 409]; *People* v. *Ashley, supra,* 42 Cal.2d at p. 258.)

In an effort to further clarify its intent to bring all of the theft crimes under one umbrella, section 490a was enacted in the same year to provide: "Whenever any law or statute . . . refers to or mentions larceny, embezzlement, or stealing, said law or statute shall . . . be read and interpreted as if the word 'theft' were substituted therefor."

While the purpose of these legislative changes was said to be to "remove technicalities" that existed in pleading and proof of theft crimes which existed at common law (*People* v. *Ashley, supra,* 42 Cal.2d at p. 258), it was also determined that none of the elements of the several crimes assembled under the term "theft" had been changed. (*People* v. *Myers* (1929) 206 Cal. 480, 483 [275 P. 219].) Indeed, in *People* v. *Myers,* the court stated in discussing the fact that the elements of the various crimes remained distinct, "[t]his is particularly true of the crime of larceny. All former elements of this offense are perpetuated and contained in section 484 as amended." (*Id.* at p. 483.)[18]

Combining several common law crimes under the statutory umbrella of "theft" did not eliminate the need to prove the elements of the particular type

---

[18]A practical consequence of the 1927 amendments was to permit the charging of the crime of theft, regardless of the common law theory, by alleging that the defendant unlawfully took the property of another (§ 952, final sentence). (This amendment is continued in force in the current version of § 952.) This rule of simplicity in pleading does not alter the elements of

of theft alleged. (*People* v. *Myers, supra,* 206 Cal. 480; *People* v. *Cravens* (1947) 79 Cal.App.2d 658 [180 P.2d 453], disapproved of on other grounds in *People* v. *Jones* (1950) 36 Cal.2d 373 [224 P.2d 353].)

Second, the 1927 amendment to section 484 codified for the first time the concept that real property could be the subject of the crime of "theft." As we noted above, section 484 was amended to read: "Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of . . . real . . . property . . . is guilty of theft."[19] This text, which is today subdivision (a) of section 484, has not been substantively further changed since its addition to the Penal Code in 1927. That codification did not mean that every "taking" of real property would thereafter constitute the crime of theft.

Construing the 1927 amendment in accordance with the applicable rules of statutory construction set out above, it is evident that what was made criminal by that amendment to section 484 was (1) theft (2) of real property (3) by false pretense or representation when (4) the miscreant possessed the requisite intent. The section did not criminalize *all* "takings" of "real property." This is apparent from the plain language of the statute as well as from its long-standing interpretation in the cases discussed, *ante.*[20]

### d. *Application of principles.*

■ The legislative history of section 484, subdivision (a) confirms that only those takings of real property effected by false pretense or representation can be theft. In the instant case, no false representation or pretense was made to the owners of the properties alleged to have been taken. Respondent's legal theory was fatally flawed notwithstanding the substantial evidence of wrongdoing for which respondent sought sanction. That Sanders's conduct may have violated other, uncharged statutes does not permit us

proof required. Those elements depend upon the type of theft committed. (*People* v. *Myers, supra,* 206 Cal. at pp. 482-483.)

The current case illustrates the fact that simplicity in pleading is not mirrored by simplicity in proof. Simplicity in pleading does not replace the requirement that the elements of a legislatively defined crime must be established by the evidence. (*In re Winship, supra,* 397 U.S. 358; *People* v. *Cuevas, supra,* 12 Cal.4th at p. 260.)

[19]As amended in 1927, the revised section also included the language set out in footnote 12, *supra,* regarding false representation and pretense. Both of these 1927 changes are now codified in section 484, subdivision (a).

[20]Our analysis finds further support in the legislative history of section 532, which proscribes fraudulently obtaining money, property or labor. This section was expanded in 1905 to include real property as a category of property subject to its terms. Prior to that expansion, defrauding a person of real property was not proscribed by that section. The legislative history of section 532, now section 532, subdivision (a), is discussed in *People* v. *Brunwin* (1934) 2 Cal.App.2d 287, 295 [37 P.2d 1072].

to sustain the judgment of conviction on the sole basis alleged by the prosecution.

In amending section 484, subdivision (a), the Legislature created the crime of theft of real property, defining it as theft of real property by false pretense or representation. As this was the only crime charged in the information, and as there is no evidence of any false representation, the convictions on counts 1 through 10 must be reversed.

2. *Other contentions; petition for writ of habeas corpus.*

This disposition makes unnecessary resolution of any of the other contentions presented in the appeal.

Sanders, who is not in custody, also filed a petition for habeas corpus; that petition is made moot by this disposition.

### DISPOSITION

The judgment is reversed; the matter is remanded to the trial court for any further appropriate proceedings.

The petition for writ of habeas corpus is denied.

Klein, P. J., and Croskey, J., concurred.