[No. F031606. Fifth Dist. Jan. 28, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL RODRIGUEZ, Defendant and Appellant.

**COUNSEL**

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Stephen G. Herndon, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, J.**—A jury convicted defendant David Michael Rodriguez of first degree burglary. The issues on appeal are: whether a burglary of a home office that, among its features, shares a roof and a common wall with the residence constitutes first degree burglary, and whether the court adequately instructed the jury. We affirm.

### PROCEDURAL BACKGROUND

On June 16, 1998, the District Attorney for Madera County filed a third amended information charging defendant with residential burglary in violation of Penal Code section 459.[1] In addition, the information contained three special allegations. First, defendant had suffered three prior serious felony convictions within the meaning of section 667, subdivisions (b) through (i). Second, defendant had been convicted of first degree burglary on November 28, 1989, within the meaning of section 667, subdivision (a)(1). Third, defendant had been convicted of first degree burglary on August 12, 1991, had served a prior prison term within the meaning of section 667.5 for that crime, and had committed another felony offense within five years of that prior prison term within the meaning of section 667.5, subdivision (b). Defendant pled not guilty and denied the special allegations.

A jury found defendant guilty of burglary, with a special finding that the burglary was of the first degree. The court found true defendant's three prior conviction allegations. After denying defendant's motion to dismiss two of

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

his prior strikes pursuant to section 1385, the court sentenced defendant to 30 years to life.

Defendant timely appeals.

## FACTUAL BACKGROUND

Bill Moss operated Bill Moss Electric out of his home office in Madera. The office provided clerical functions for Moss's work as an electrician. His residence and office were under the same roof and shared a common wall. The office was not used as living quarters and there was no interior door connecting the office to the residence. The office and the dwelling had exterior doors leading to the same driveway. The door to the office was four to five feet away from the door to the residence. The home and the home office were partially surrounded by the same chain link fence.

On the morning of January 28, 1997, Bill Moss and his wife, Denise, left their home office. Denise left later than Bill, just before noon. She had prepared some invoices, which she was taking to the post office for mailing. The office door was closed, but unlocked. When Bill returned around noon, he found parked in his driveway an unfamiliar car. He pulled in behind it and then saw defendant standing on the side of his house looking at a ladder that was leaning against the outside wall, on the office side of the house, inside the chain link fence. Bill accosted a nervous defendant who claimed he was looking for some girl and that he was at the wrong house.

Noticing that the door to the office was ajar about 10 inches, Bill said to defendant, "I hope you haven't been in my house." Defendant replied, "No, I haven't." Defendant then left quickly on foot, saying "I'll be back for my car. . . ."

After defendant departed, Bill went into the office to see if anything was missing. He noticed that the fax machine, a television (which Denise had been watching before she left), and a cordless screwdriver had been moved away from their original locations to a table near the door. The wires from the fax machine and the television were broken, indicating that they had been torn from the wall.

Bill called the police, who later apprehended defendant. Keys found on defendant after his arrest fit the vehicle parked in the Mosses' driveway, even though defendant was not the registered owner of the vehicle. Madera Police Sergeant Salas testified that burglars generally do not use their own vehicles while committing burglaries because of the ease of tracing their identity through the license plates.

DISCUSSION

I.

*Sufficiency of the Evidence of Residential Burglary*

■ When reviewing the sufficiency of evidence on appeal, as long as circumstances reasonably justify the fact finder's determination, we must accept it, even though another fact finder may have reasonably determined the opposite. (*People v. Perez* (1992) 2 Cal.4th 1117, 1124 [9 Cal.Rptr.2d 577, 831 P.2d 1159]; *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ Before reviewing the specific arguments and evidence, we note the longstanding reasoning for treating residential burglaries more seriously than other burglaries. Common law burglary sought to protect the peace of mind and security of residents so that they could enjoy their home without intrusion because, at common law, "a person's home was truly his castle." (*People v. Gauze* (1975) 15 Cal.3d 709, 712 [125 Cal.Rptr. 773, 542 P.2d 1365].)[2] By maintaining the distinction between an inhabited and an uninhabited dwelling, current burglary statutes continue to provide increased protection for the privacy and enjoyment of one's home. (See *ibid.*)

As the Supreme Court explained: In general, "Cases interpreting the term 'inhabited dwelling house' in section 460 . . . ha[ve] made it clear that this term should be construed to effectuate the legislative purposes underlying the statute, namely, to protect the peaceful occupation of one's residence. Thus, the courts [have] recognized that our burglary law stems from the common law policy of providing heightened protection to the residence. [Citations.] The occupied dwelling continued to receive heightened protection under our statutes in order to avoid the increased danger of personal violence attendant upon an entry into a 'building currently used as sleeping and living quarters.' [Citation.] As [one court has] explained, 'a person is more likely to react violently to burglary of his living quarters than to burglary of other places because in the former case persons close to him are more likely to be present, because the property threatened is more likely to belong to him, and because the home is usually regarded as a particularly private sanctuary, even as an extension of the person.' [Citation.] Courts specifically have recognized that the distinction between first and second degree burglary is founded upon the perceived danger of violence and personal injury that is involved when a residence is invaded. [Citations.]"

---

[2] At common law, burglary was generally defined as " 'the breaking and entering of the dwelling of *another* in the nighttime with intent to commit a felony.' " (15 Cal.3d at p. 711.)

(*People v. Cruz* (1996) 13 Cal.4th 764, 775-776 [55 Cal.Rptr.2d 117, 919 P.2d 731].) Consequently, courts broadly interpret the term "inhabited dwelling house" in order to effect the legislative purpose of the statute. (*Id.* at pp. 776, 779.)[3]

■ Defendant contends the evidence was insufficient to show that he committed first degree burglary. Specifically, he asserts the home office he burglarized was not a functional part of the residence, even though the office and residence shared the same roof, because the office was neither used as living space nor connected to the dwelling by an interior door. According to defendant, breaking into such a home office constitutes merely a second degree burglary.

By statute, "[e]very burglary of an inhabited dwelling house, . . . or the inhabited portion of any other building, is burglary of the first degree." (§ 460, subd. (a).) "All other kinds of burglary are of the second degree." (*Id.*, subd. (b).) The term "inhabited" is statutorily defined as "currently being used for dwelling purposes, whether occupied or not." (§ 459.) ■ Courts have construed the terms "residence" and "inhabited dwelling house" to have equivalent meanings. (*People v. Thomas* (1991) 235 Cal.App.3d 899, 907 [1 Cal.Rptr.2d 434]; *In re Andrew I.* (1991) 230 Cal.App.3d 572, 582 [281 Cal.Rptr. 570].)

In determining whether a structure is part of an inhabited dwelling, the essential inquiry is whether the structure is "functionally interconnected with and immediately contiguous to other portions of the house." (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1404 [48 Cal.Rptr.2d 256], disapproved on another ground in *People v. Dotson* (1997) 16 Cal.4th 547, 559 [66 Cal.Rptr.2d 423, 941 P.2d 56].) "Functionally interconnected" means used in related or complementary ways. "Contiguous" means adjacent, adjoining, nearby or close. (See Webster's New Internat. Dict. (3d ed. 1986) p. 492 ["ADJACENT . . . next or adjoining with nothing similar intervening . . . not distant . . . touching or connected throughout"]; see also Black's Law Dict. (6th ed. 1990) p. 320, col. 2 ["[i]n close proximity; neighboring; adjoining; . . . in actual close contact"].)

---

[3]Defendant disputes applying the rationale for increased punishment for first degree burglary to the present home office break-in. Defendant argues that the purpose of burglary laws is to protect people inside (versus outside) buildings in general, not residences in particular. While defendant cites to *People v. Gauze,* the *Gauze* court viewed this distinction as irrelevant for purposes of section 459. (15 Cal.3d at p. 716.) Additionally, defendant cites *People v. Lewis* (1969) 274 Cal.App.2d 912 [79 Cal.Rptr. 650], for the proposition that the difference between first and second degree burglary does not turn on whether occupants of the structure may surprise the burglar. We disagree, as did the California Supreme Court in the language cited above from *People v. Cruz, supra,* 13 Cal.4th 764.

 The immediately contiguous requirement is easily met here because this home office adjoined the residence and shared the same roof and a common wall. The closer issue is functional interconnection.

Relying on *People v. Warwick* (1933) 135 Cal.App. 476 [27 P.2d 396], defendant argues that he is guilty only of second degree burglary because the office was not a functional part of the residence. The defendant in *Warwick* broke into a tire store at a time when it was closed to the public and no one was in or around the store. (*Id.* at p. 477.) The court held that the tire store was not a "dwelling house" within the meaning of the burglary statute even though there was a hotel on an upper floor of the same building as the store. (*Id.* at p. 478.) Not only was the entrance to the hotel on another street, but the court noted that there was no communication between the store and the hotel and there was no indication that the store and the hotel were under the same management. (*Ibid.*) In short, the store and the hotel were unrelated. (See *ibid.*)

Unlike the hotel and the store in *Warwick*, the home and the office of the victims in the present case were related. The home and the office were maintained by the same husband-and-wife team in a residential neighborhood; the office contained property belonging to the homeowners. There was communication between the home and the office in the sense that the husband and wife freely traveled back and forth between the home and the office in order to maintain both their business and their household. Indeed, this is one of the advantages of having a home office. Thus, the home and the office were interrelated and the primary nature of the structure was residential, not commercial.

Functionally, the home office permitted the residents to have a flexible work schedule and to travel back and forth between the home and the office frequently and easily in order to eat, to rest and the like. Moreover, the office allowed the residents to spend more time with family, including children.[4] A family member could be expected to enter the home office, not necessarily to work, but to ask a question, seek advice, or simply to "check in" or "touch base." A child coming home from school might go into the office looking for a parent, even before going into the residence.

The common walkway and driveway increased the functionality of the setup, as did the chain link fence. The office also provided income in order to maintain the home. Thus, the multifarious purposes of a home office reveal its integral relationship with the main house.

The conduct of the parties reflects this integration. Upon seeing the door to the home office ajar and observing defendant, Bill Moss remarked, "I

[4]The Mosses lived at the house along with their two sons.

hope you haven't been in my house." This suggests that Moss considered the home office an extension of his home and his person. In short, defendant's invasion of the Mosses' home office involved a significant intrusion into the Mosses' personal privacy. (See *People v. Brown* (1992) 6 Cal.App.4th 1489, 1496 [8 Cal.Rptr.2d 513] [under the "reasonable expectation" test, "the proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from unauthorized intrusions"].) Thus, entry by defendant into the home office involved a greater degree of intrusion on personal privacy and entailed a greater risk of violent confrontation; defendant himself had every reason to be mindful of the nature of his break-in from the layout we have described. (See *People v. O'Bryan* (1985) 37 Cal.3d 841, 844-845 [210 Cal.Rptr. 450, 694 P.2d 135] ["entry into an inhabited space . . . presents a greater intrusion upon personal privacy, and a greater risk of violent confrontation, than does entry into an uninhabited area"].)

Nonetheless, defendant argues the office was only an uninhabited portion of an inhabited building. Defendant relies on *People v. Grover* (1986) 177 Cal.App.3d 1182 [223 Cal.Rptr. 444], to support this argument. In *Grover*, we held that a first degree burglary committed between July 1, 1977, and January 1, 1979, had to occur in a residence. (*Id.* at pp. 1183-1184.)[5] We also stated: "Despite extensive research, we are unable to find any case upholding a conviction of first degree burglary where the defendant did nothing more than burglarize the uninhabited portion of an inhabited building. . . . Burglary of an uninhabited building or an uninhabited portion of an inhabited building, would be burglary in the second degree." (*Id.* at p. 1187.) However, defendant overlooks the paragraph immediately preceding the portion quoted above, in which we acknowledged the many cases that have held that structures attached to a residence that are an integral part of that residence qualify as "inhabited dwellings." (*People v. Grover, supra,* 177 Cal.3d at p. 1187.) Thus, a more complete statement of our holding in *Grover* is that burglary of an uninhabited portion of an inhabited building is burglary in the second degree unless the uninhabited portion of the inhabited building is an integral part of that inhabited dwelling. (See *ibid.*)

Defendant additionally makes a number of arguments that confuse the legal standard for determining whether an area qualifies as a dwelling. He argues that this home office "lack[ed] any connection with private life" because of its purely commercial use, as evidenced by the separate telephone

---

[5]During that time, section 460 provided that "[e]very burglary of an inhabited dwelling house . . . in the nighttime, is burglary of the first degree." (See *People v. Grover, supra,* 177 Cal.App.3d at p. 1185, citing former § 460, subd. 1, enacted by Stats. 1976, ch. 1139, § 206.5, p. 5120, operative July 1, 1977.)

lines for the home and the office.[6] According to defendant, there was no evidence that the home office in this case served or shared any of the private functions commonly associated with a residence. In addition to the fact that just prior to the burglary Denise Moss had watched the television in the office, defendant's argument overlooks the standard we announced in *People v. Ingram, supra,* 40 Cal.App.4th at page 1404, which requires only a functionally related and structurally attached area. The functions of the attached structure need not be of a purely private nature. This home office was sufficiently connected to the private lives of the Mosses as stated above.

Defendant also claims that just because the same driveway serviced both the home and the business does not mean that the business area was used for dwelling purposes. This is true, but misses the point. The question is not whether the specific area is used for sleeping or everyday living, but whether the area is functionally interconnected to and immediately contiguous to the residence, which is used for sleeping or everyday living. (See *People v. Ingram, supra,* 40 Cal.App.4th at p. 1404.) The common walkway and driveway are evidence of the functional relationship between the home and the home office. Similarly, defendant's argument that whether the structures share the same roof is irrelevant ignores the contiguity requirement.

The area in question must be integrally related to and immediately contiguous to the living area—not necessarily part of it. (*People v. Ingram, supra,* 40 Cal.App.4th at p. 1404.) Defendant's argument that the office was not part of the family living space thus misses this important distinction spelled out in *Ingram.*

Nor must the family living space be connected with the home office by means of an interior door. In *Ingram,* the area in question was an attached garage that was not connected to the living quarters by an interior door. We explained: "There is no meaningful distinction between an attached garage with an outside door and an attached garage with an inside door for purposes of deciding the degree of burglary. The close physical proximity of an attached structure is precisely what increases the potential for confrontation and threatens the safety of residents. This potential is no less when access to

---

[6]*City of Los Altos v. Barnes* (1992) 3 Cal.App.4th 1193 [5 Cal.Rptr.2d 77], cited by both parties on this issue, is irrelevant because that case concerned zoning ordinances restricting home offices in residential neighborhoods. The ordinance in *Barnes* only allowed business to be carried on in a home if no assistants were employed, the business was conducted in the dwelling by the occupants of the property, and the business was clearly incidental to the residential use of the building. (*Id.* at p. 1197.) In addition, the business could not change the residential character or appearance of the dwelling or negatively impact the residential uses of the district. (*Ibid.*) However, a home office that does not qualify under the ordinance may nevertheless qualify as an integral part of a dwelling for purposes of the burglary statute.

the garage is from outside rather than from inside the house. The proper focus is whether the attached structure is an integral part of a dwelling; that is, functionally interconnected with and immediately contiguous to other portions of the house. (*People v. Moreno* [(1984)] 158 Cal.App.3d [109, 112 [209 Cal.Rptr. 17].) The absence of an inside door does not compel a designation of second degree burglary." (*People v. Ingram, supra,* 40 Cal.App.4th at p. 1404.)

*People v. Moreno* (1984) 158 Cal.App.3d 109 [204 Cal.Rptr. 17], likewise held that a garage under the same roof as the living quarters, contiguous to and functionally interconnected with other parts of the home, was part of an inhabited dwelling, even though there was no door connecting the garage to the interior of the house. (*Id.* at p. 112.)

Most recently, the appellate court in *In re Edwardo V.* (1999) 70 Cal.App.4th 591 [82 Cal.Rptr.2d 765], determined the burglary of a garage that shared the same roof and one wall of a duplex was a first degree burglary, even though the residents of the duplex only had access to the garage through an outside door. (*Id.* at p. 592.) In concluding that the garage was an integral part of the dwelling, the court emphasized the close proximity to the residence, the shared roof, the functional interconnectedness of the garage and the residence, as well as the reasonable expectations of the residents. (*Id.* at pp. 594-595; see also *People v. Fox* (1997) 58 Cal.App.4th 1041 [68 Cal.Rptr.2d 424].)

Cases have also examined the functional relationships to a home of a storeroom or of a laundry facility unconnected by doorways. For instance, in *People v. Coutu* (1985) 171 Cal.App.3d 192 [217 Cal.Rptr. 191], the defendant broke into a storeroom that was connected to a residence by a breezeway such that the residence and the storeroom shared the same roof, but not a common wall. (*Id.* at p. 193.) One side of the breezeway was open; the other side had a door. (*Ibid.*) The resident maintained a washing machine in the breezeway; in the storeroom, he kept foodstuffs and gardening tools. (*Ibid.*) The court reasoned that the storeroom was " 'functionally interconnected with' and 'an integral part of' the main house" because the storeroom was connected to the main house by the breezeway. (*Ibid.*)

Similarly, in *People v. Woods* (1998) 65 Cal.App.4th 345 [75 Cal.Rptr.2d 917], a common laundry facility in an apartment complex under the same roof as the apartments and immediately contiguous to occupied apartments above and below "was an integral part of the complex and thus an inhabited dwelling." (*Id.* at p. 349.)

Accordingly, under sections 459 and 460, we find significant similarities between a garage, a storeroom, a laundry room, and a home office.

Entry into a structure that is functionally related to and immediately contiguous to a dwelling qualifies for first degree burglary. This is so even though there is no connecting door to the residence and the structure serves as a storehouse, workshop, or office or serves some other need of the residents. The use of the area need not be limited to the storage or use of property ordinarily related to dwelling places. Whereas a garage or storage area next to a residence typically contains items related to the home and its maintenance (e.g., food, bicycles and other athletic equipment, gardening equipment, a washer and dryer, an extra refrigerator or furniture) and a home office generally contains office-related items (e.g., a computer, fax, phone, printer, desk, files, and bookshelves), we are satisfied the contents of the structure are not determinative.

Thus, many of the reasons that make traditional inhabited dwelling burglaries dangerous are present when a home office attached to a main house is burglarized, even though the office is not connected to the home by an interior door. The common law origins of burglary and the justifications for distinguishing between inhabited and uninhabited buildings further support our broad interpretation of the term inhabited dwelling house. ▇ We conclude that a reasonable jury could conclude from the evidence that the home office was functionally related to and immediately contiguous to the home. Sufficient evidence supports the verdict of first degree burglary.

II.

*Jury Instruction*

▇ Defendant contends that prejudicial error occurred when the court instructed the jury on the inhabited dwelling element of first degree burglary. According to defendant, it is reasonably likely that jurors construed the oral instruction to require conviction upon finding that the office was attached to a structure customarily used as a dwelling.

According to the reporter's transcript, the judge instructed the jury as follows: "An inhabited dwelling house is a structure which is occupied and customarily used as a dwelling. It is inhabited although the occupants are temporarily absent. *Burglary of an office attached to an integral part of an inhabited dwelling is burglary of an inhabited dwelling.*" However, the written version of the italicized material provided: "Burglary of an office attached to *and an* integral part of an inhabited dwelling is burglary of an inhabited dwelling." The prosecutor later had the reporter's transcript amended to indicate that the written and oral instructions were the same.

"It is generally presumed that the jury was guided by the written instructions." (*People v. Davis* (1995) 10 Cal.4th 463, 542 [41 Cal.Rptr.2d 826, 896

P.2d 119]; *People v. McLain* (1988) 46 Cal.3d 97, 115 [249 Cal.Rptr. 630, 757 P.2d 569] [same].) The written version of jury instructions governs any conflict with oral instructions. (*People v. Osband* (1996) 13 Cal.4th 622, 717 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *People v. Sanders* (1998) 67 Cal.App.4th 1403, 1412, fn. 14 [79 Cal.Rptr.2d 806].) Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions. (*People v. Osband, supra,* 13 Cal.4th at p. 717; see, e.g., *People v. Moore* (1996) 44 Cal.App.4th 1323, 1330, fn. 5 [52 Cal.Rptr.2d 256] [same].)

Here, the trial court's instructions were delivered to the jury orally and in writing. Because the jury had access to the correct written instructions while deliberating, any error in reading the instructions was harmless. Thus, the prosecutor appropriately had an amended reporter's transcript prepared to conform to the jury instruction as written.

Defendant also argues that the term "integral" in the last sentence of the jury instruction does nothing to convey that the office must have a functional, as opposed to a merely structural, connection to the residence. According to defendant, the instruction thus removed an essential element of the offense because the jury did not have to find a functional connection between the home and the home office.

We disagree. The disputed portion of the instruction provided: "Burglary of an office attached to and an integral part of an inhabited dwelling is burglary of an inhabited dwelling." The term "attached to" clearly requires a structural relationship and "an integral part" necessarily represents a functional relationship. Otherwise, the latter term would be redundant of the first. The disputed portion of the written instruction adequately states the law.

We find no instructional error occurred.

### DISPOSITION

The judgment is affirmed.

Ardaiz, P. J., and Buckley, J., concurred.

A petition for a rehearing was denied February 28, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme court was denied April 26, 2000.