Filed 2/22/21  P. v. Thompson CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERALD PIERRE THOMPSON,<br><br>    Defendant and Appellant. | B300425<br><br>(Los Angeles County<br>Super. Ct. No. BA459703) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael R. Johnsen and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Gerald Thompson of sexually abusing his stepdaughter, T.G., and his friend's daughter, Z.W. On appeal, he contends (1) the trial court erred in denying his request to represent himself, (2) the evidence was insufficient to support his convictions on counts 2 and 3 for committing lewd acts on a child, (3) the court prejudicially erred in instructing the jury that the continuous sexual abuse of a child is a general intent crime, (4) the court prejudicially erred in failing to orally instruct the jury with CALCRIM No. 252, (5) the court prejudicially erred in misreading CALCRIM No. 351 to the jury and failing to provide the written instruction, and (6) the court violated appellant's constitutional rights in imposing fines and fees without holding a hearing on his ability to pay. We reject these contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Charges

Appellant was charged with the continuous sexual abuse of stepdaughter when she was under 14 years old (Pen. Code, § 288.5, subd. (a) (288.5(a)); count 1),[1] a lewd act upon stepdaughter when she was 14 years old (§ 288, subd. (c)(1); count 2), a lewd act upon stepdaughter when she was 15 years old (§ 288, subd. (c)(1); count 3), and the continuous sexual abuse of Z.W. when she was under 14 years old (§ 288.5(a); count 4). In counts 1, 2 and 4, the information alleged the special circumstance that appellant committed a qualifying sexual offense against more than one victim (§ 667.61, subd. (a)). The prosecution also alleged as to all counts that appellant suffered a

---

[1]     All further statutory references are to the Penal Code.

prior robbery conviction that operated as a second strike (§§ 667, subds. (b)–(j)/1170.12, subds. (b)–(e)(1)).

**2.     *Stepdaughter's Testimony***

Stepdaughter testified at trial that appellant was her mother's boyfriend and she regarded him as her stepfather.  In 2007, when stepdaughter turned 11 years old, appellant began sexually molesting her.  The first incident occurred when appellant got into bed with her one morning and rubbed her breasts, vagina and buttocks over her clothes.  He touched stepdaughter again in the same way one more time during her 11th year.

At some point appellant began touching stepdaughter under her clothing, and touched her breasts, vagina and buttocks with his hands and mouth.  She recalled one incident when she was 11 or 12 years old.  Appellant paid her to massage his feet then guided her hand under his clothes to his penis.  Stepdaughter testified that appellant made her rub his penis more than 10 times, and that he ejaculated three or four times.  Once he ejaculated on the staircase in their apartment, and another time in the living room.

Stepdaughter testified that he touched her in a "sexual way" approximately every other day from age 11 through age 14.  When she was 15 years old, the frequency of the molestation was "probably like the same."  He stopped touching her when she was "around 16" and she avoided coming home.  In 2017, when stepdaughter was in college, she told her mother about appellant's sexual abuse.

Stepdaughter and her mother decided to secretly record conversations between stepdaughter and appellant in order to obtain incriminating statements from him.  Two recordings were

3

played for the jury in which stepdaughter confronted appellant with the sexual abuse, and he apologized and blamed his behavior on his own childhood sexual abuse. The day after the second recording, she gave both recordings to the police.

Even though their fathers were friends, stepdaughter and Z.W. did not know each other.

### 3. *Z.W.'s Testimony*

Z.W. also testified at trial. Appellant's best friend was Z.W.'s father. In 2011, when Z.W. was 12 years old, appellant came to her home and, while she was washing dishes, grabbed her breasts and tried to put his hands in her pants. She pushed him away. Several months later, Z.W.'s family was evicted from their apartment, and appellant allowed them to move into his apartment.

Appellant molested Z.W. a second time when she was living in his apartment. He came into her bedroom and touched her vagina, penetrating it with his fingers. He digitally penetrated her on two other occasions. Another time, appellant put Z.W.'s hands on his penis. Appellant tried to sexually abuse her on other occasions but she fought back, hitting him and pushing him away. In 2012, Z.W. told her mother about the abuse, and her mother reported appellant to the police.

Appellant was arrested but released a few days later.

### 4. *Appellant's Statements While in Custody*

Defendant was arrested again in 2017, this time in connection with sexually abusing stepdaughter. He waived his rights and agreed to speak with the police officers. The recording and transcript of the interrogation was entered into evidence. In his interrogation, appellant denied touching stepdaughter in a sexual way, but claimed she had rubbed her body against him

4

and indicated that she wanted to have sex with him. Stepdaughter put appellant's hands on her body. She sometimes massaged his feet while he was asleep and in doing so may have touched his penis.

Later that day, and while still in custody, appellant spoke to his mother on the phone. The call was recorded. He told his mother he was going to get blamed for "something bad [he] did not initiate." He said stepdaughter was "kind of foul . . . but being that I'm the adult I did it." Stepdaughter "was growing up[,] sexually active, whatever. Doing – trying – just coming in my room." "I did fuck up, but – and I should have known better."

**5.      *Verdict and Sentence***

The jury found appellant guilty of all charges and the special circumstances true. Appellant admitted the prior strike allegation. The court imposed 25-year-to-life terms on each of counts 1 (stepdaughter) and 4 (Z.W.), the two continuous sexual abuse charges, plus a three-year term on count 2, and the midterm of eight months on count 3, for individual lewd acts on stepdaughter. All terms were doubled under the Three Strikes law, and imposed consecutively. Appellant's total sentence was 100 years to life plus seven years and four months. He timely appealed.

### *DISCUSSION*

**1.      *The Trial Court Did Not Err in Denying Appellant's Request to Represent Himself***

Appellant contends the trial court abused its discretion when, just as voir dire was to begin, the court denied his request for self-representation. He acknowledges the request was untimely, but argues the court abused its discretion in denying

the request without making an adequate inquiry.  We find no abuse of discretion.

At the outset of jury selection, defense counsel stated that appellant wanted to address the court about self-representation. The court responded that the request was untimely, and asked appellant if he wanted to "go pro[.] per[.], right now."  Defense counsel responded that appellant did not want to "start right now."  The court stated "there's no other option . . . there's no continuance," and that appellant had "a very good attorney." Appellant agreed, but asserted there were "still some things" he needed to "take care of and explore."  The court asked appellant if he understood that the court would not continue the matter, and appellant responded, "yes."  The court then proceeded to call in a prospective jury panel.

A criminal defendant has a Sixth Amendment right to represent himself at trial.  (*People v. Williams* (2013) 58 Cal.4th 197, 252.)  " 'A trial court must grant a defendant's request for self-representation if the defendant knowingly and intelligently makes an unequivocal and timely request after having been apprised of its dangers.' [Citations.]" (*Id.* at pp. 252–253.)  "[A] *Faretta*[2] motion is timely if it is made 'within a reasonable time prior to the commencement of trial.' [Citation.]" (*People v. Johnson* (2019) 8 Cal.5th 475, 499.)

If a *Faretta* motion is not timely, "self-representation no longer is a matter of right but is subject to the trial court's discretion."  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1365.) "In exercising this discretion, the trial court should consider factors such as ' "the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel,

---

2      *Faretta v. California* (1975) 422 U.S. 806.

6

the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." ' [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 959.)

Appellant's request was untimely. (See *People v. Johnson*, *supra*, 8 Cal. 5th at p. 499 [" '[W]e have held on numerous occasions that *Faretta* motions made on the eve of trial are untimely' "]; *People v. Valdez* (2004) 32 Cal.4th 73, 102 [a *Faretta* motion made "moments before jury selection was set to begin" deemed untimely].) Appellant sought self-representation immediately before voir dire, after the case had been pending for 18 months.[3] Appellant also acknowledged that he was not ready to proceed that day, and the trial court declined to grant a continuance. Appellant provided no reasonable cause for the lateness of his request. (See *People v. Horton* (1995) 11 Cal.4th 1068, 1110 ["If the motion is untimely . . . the defendant has the burden of justifying the delay"].)

Appellant argues that even if the request appeared untimely, the trial court failed to make an adequate inquiry. "When such a midtrial request for self-representation is presented the trial court shall inquire sua sponte into the specific factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required." (*People v. Windham* (1977) 19 Cal.3d 121, 128–129.) Here, the trial court inquired as to whether appellant was ready to proceed

---

[3] On appeal, appellant mentions that his counsel told the court at the *Faretta* hearing that appellant had previously tried to make a *Faretta* request in Department 100. The prior request is not in the record, and we cannot evaluate it merely on counsel's assertion.

immediately without counsel, and appellant indicated he was not. The trial court then asked appellant if he understood he would not be granted a continuance. Appellant said he understood the court's comments, indicated that he had no quarrels with counsel's representation, and then said only that he needed to "explore" "things." The court stated that appellant had "a very good attorney."

"Among other factors to be considered by the court in assessing such requests made after the commencement of trial are the quality of counsel's representation of the appellant . . . the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham, supra,* 19 Cal.3d at p. 129; see also *People v. Lynch* (2010) 50 Cal.4th 693, 722, 726 *abrogated on another ground by People v. McKinnon* (2011) 52 Cal.4th 610 [describing additional factors].)

In addition to the factors the court described on the record, other considerations were self-evident: the case had been pending for 18 months, jury selection was imminent and prospective jurors had been called, and appellant did not provide a meaningful explanation for why he needed a continuance.[4] The record we have just described shows the court did not abuse its discretion in denying the *Faretta* request.

---

[4] Appellant did tell the trial court that there were "still some things" he needed to "take care of and explore." He did not make an offer of proof in the trial court; nor does he tell us on appeal what those things were.

**2.** ***Substantial Evidence Supports the Convictions for Lewd Acts Upon a Child in Counts 2 and 3***

Appellant contends there was insufficient evidence to support his convictions for lewd or lascivious acts (§ 288, subd. (c)(1)) against stepdaughter when she was 14 and 15 years old respectively (counts 2 and 3).[5]  He argues that stepdaughter's testimony did not adequately support these convictions because she did not testify in sufficient detail about specific acts that occurred when she was 14 and 15 years old.  Instead, stepdaughter only testified that the frequency of the abuse when she was age 14 was "the same" as when she was 12 and 13 years old, and was "probably like the same" when she was age 15.

Stepdaughter's entire testimony about the individual acts of sexual abuse alleged in counts 2 and 3 was:

> "[Prosecutor]:  How often did he touch you in this sexual way when you were 11 years old?
>
> "[Stepdaughter]:  As often as he could . . . .
>
> "[Prosecutor]:  Can you tell us, and you can approximate, how many times a month he would touch you in this manner?
>
> "[Stepdaughter]:  No.
>
> "[Prosecutor]:  Okay.  Would you say it was every single day?
>
> "[Stepdaughter]:  Maybe like every other day.
>
> "[Prosecutor]:  Okay.  Now, let's go to when you were 12 years old.  Did he continue to touch you in this manner?
>
> "[Stepdaughter]:  Yes.

---

[5]    Appellant does not make a substantial evidence argument as to counts 1 and 4, the two continuous sexual abuse convictions.

9

"[Prosecutor]:  And how often was he touching you in this manner?

"[Stepdaughter]:  The same.

"[Prosecutor]:  So like every other day?

"[Stepdaughter]:  Yeah.

"[Prosecutor]:  How about when you were 13 years old?

"[Stepdaughter]:  Yeah, the same.

"[Prosecutor]:  How about when you were 14 years old?

"[Stepdaughter]:  The same.

"[Prosecutor]:  How about when you were 15 years old?

"[Stepdaughter]:  I don't – I don't remember.  Probably like the same."

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

Stepdaughter's inability to describe precise dates, times, places, or circumstances does not render her testimony legally insufficient.  In *People v. Jones* (1990) 51 Cal.3d 294, our Supreme Court recognized that child victims often cannot recall specific dates, locations or other details of sexual offenses.  (*Id.* at pp. 313–321.)  Thus, prosecutions under section 288 must sometimes be based on "generic testimony."  (*Id.* at p. 315.)  In *Jones* the Court found a child witness's generic testimony sufficient to support a conviction for lewd and lascivious conduct, and reasoned that "the particular details surrounding a child

10

molestation charge are not elements of the offense and are unnecessary to sustain a conviction." (*Ibid*.)

"The victim, of course, must describe *the kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd conduct, intercourse, oral copulation or sodomy). Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'). Finally, the victim must be able to describe *the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstance of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones*, *supra*, 51 Cal.3d at p. 316.)

Here, stepdaughter testified in great detail as to several specific lewd acts appellant repeatedly committed on her when she was under the age of 14, and that he committed these acts—such as touching her vagina, breasts and buttocks and making her rub his penis—whenever he was alone with her, about every other day.

We have no doubt the jury understood that stepdaughter's testimony that appellant's acts of sexual abuse when she was 14 and 15 years old were the "same" or "probably the same," referred to what had happened to her when she was under 14, and that those acts continued into her 14th and 15th years. Consistent with what *Jones* requires, she identified the kinds of acts appellant

11

committed, the frequency of their occurrence, and the general time period of abuse. This testimony was sufficient to sustain the convictions on counts 2 and 3. (See *Jones*, *supra*, 51 Cal.3d at p. 314 ["[E]ven generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of *specific*, albeit undifferentiated, incidents, *each* of which amounts to a separate offense, and *each* of which could support a separate criminal sanction."].)

**3.** ***Instructional Errors***

Appellant makes three claims of instructional error: (1) instructing the jury that continuous sexual abuse is a general intent crime (CALCRIM No. 252), (2) failing to orally instruct the jury on CALCRIM No. 252, and (3) misreading CALCRIM No. 351 and failing to give a written copy of the instruction to the jury.

We review claims of instructional error de novo (*People v. Grandberry* (2019) 35 Cal.App.5th 599, 604), but with certain principles in mind. "A single jury instruction may not be judged in isolation, but must be viewed in the context of all instructions given." (*People v. Thomas* (2011) 52 Cal.4th 336, 356.) "If the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " (*Middleton v. McNeil* (2004) 541 U.S. 433, 437.) Jurors are presumed to have understood and followed the trial court's jury instructions. (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.)

      *a.     Instructing the jury that section 288.5(a) is always a general intent crime*

Appellant was charged with engaging in continuous " 'substantial sexual conduct,' " and " 'lewd and lascivious acts' "

12

with stepdaughter (count 1) and Z.W. (count 4) in violation of section 288.5(a).  Section 288.5(a) penalizes the "continuous sexual abuse of a child" defined as three or more acts of "substantial sexual conduct" *or* "lewd or lascivious conduct" with a child under 14 years of age within a period of no less than three months.[6]  The trial court instructed the jury with CALCRIM No. 252:

> "The crimes and other allegations charged in [c]ounts 1–4 require proof of the union, or joint operation, of act and wrongful intent.  [¶]  The following crime and allegation require general criminal intent:  Continuous Sexual Abuse, as charged in [c]ounts 1 and 4 and more than one victim.  For you to find a person guilty of these crimes or to find the allegations true, that person must not only commit the prohibited act, but must do so with wrongful intent.  A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law.  The act required is explained in the instruction for that crime or allegation. . . ."

---

[6]      Section 288.5(a) provides, in pertinent part:  "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of [s]ection 1203.066, or three or more acts of lewd or lascivious conduct, as defined in [s]ection 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child . . . ."

13

We agree with appellant that the court erred in instructing that section 288.5(a) is necessarily a general intent crime. Continuous sexual abuse in violation of section 288.5(a) can be committed two ways:  through substantial sexual conduct or by lewd or lascivious conduct.  (§ 288.5(a).)  Although a conviction based on "substantial sexual conduct" is a general intent crime, a finding of lewd or lascivious acts requires the specific intent " 'of arousing, appealing to, or gratifying the lust, passions, or sexual desires' " of the perpetrator or the child.  (§ 288; *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1110.)  Here, the prosecutor argued to the jury that appellant "engaged in three or more acts of substantial sexual conduct o[r] lewd and lascivious conduct with a child . . . and the child was under the age 14 years at the time of the act[s]."  Because appellant was prosecuted under both theories of continuous sexual abuse—substantial sexual conduct and lewd or lascivious conduct—the jury should have been instructed that section 288.5(a) is a general intent crime when based on acts of "substantial sexual conduct," and a specific intent crime when based on acts of "lewd or lascivious conduct."

Although CALCRIM No. 252 effectively informed the jury only about the intent required for the substantial sexual conduct prong of section 288.5(a), the trial court also instructed the jury with CALCRIM No. 1120, which states that "lewd or lascivious conduct" for purposes of section 288.5(a) "is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child."  Although this instruction was specifically directed to counts 2 and 3 (§ 288), that instruction correctly informed the jurors of the requisite intent for acts of lewd or lascivious conduct.  There is nothing in the record that

14

suggests the jury believed the specific intent for lewd and lascivious conduct under section 288.5(a) was any different than it was under section 288.

To the extent there was a conflict in the instructions, we review the error under the *Chapman v. California* (1967) 386 U.S. 18 harmless error standard. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 838.)  "[W]here a reviewing court concludes beyond a reasonable doubt that the . . . element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless."  (*Neder v. United States* (1999) 527 U.S. 1, 17; *People v. Aranda* (2012) 55 Cal.4th 342, 367–368.)

Here, the instructional error was harmless.  Appellant does not cite to any evidence that could rationally lead to a finding that the acts of lewd or lascivious conduct about which the victims testified were committed for a purpose other than sexual arousal, gratification, or abuse.  In the trial court, appellant did not contest his intent; instead, he denied that he engaged in the conduct at all.  As the defense did not contest the specific intent element for one theory of continuous sexual abuse, and there was overwhelming evidence of specific intent to convict appellant of lewd and lascivious conduct, under correct instructions, on counts 2 and 3, we find the error as to counts 1 and 4 harmless.[7]

      *b.*     *The failure to orally instruct with CALCRIM No. 252*

Although the court included CALCRIM No. 252 in the packet of instructions it gave to the jury, appellant contends the

---

[7]     Because we conclude the error was harmless, we need not decide whether appellant forfeited his argument of instructional error by failing to object to CALCRIM No. 252.

15

court prejudicially erred in not orally instructing the jury with that instruction. "It is generally presumed that the jury was guided by the written instructions." (*People v. Davis* (1995) 10 Cal.4th 463, 542.) "Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions." (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1113.)

Appellant first argues he was prejudiced by the trial court's failure to orally instruct the jury with CALCRIM No. 252 because the jury was not orally informed "regarding the necessity of a joint union between an appellant's prohibited act and his intent." However, the jury was given a accurate written copy of CALCRIM No. 252 which correctly stated the necessity of the joint union. (*People v. Osband* (1996) 13 Cal.4th 622, 717 ["[A]s long as the court provides the jury with the written instructions to take into the deliberation room, they govern in any conflict with those delivered orally"].) Thus, the error in not reading that instruction was harmless.

  c.     *The misreading and omission of a written copy of CALCRIM No. 351*

Appellant argues the trial court prejudicially erred in instructing the jury on the cross-examination of character witnesses: the court both misread CALCRIM No. 351 on this issue and failed to include a written copy of the instruction in the set given to the jury.

Appellant's childhood friend and a former employer each testified as a character witness for the defense. They had known appellant for 40 and 10 years, respectively, and told the jury that appellant was not the type of man who would inappropriately

16

touch a child. A third character witness—appellant's ex-wife — testified along the same lines. On cross-examination, the prosecutor asked appellant's friend and his former employer whether their opinion of appellant would change if they "learned that two girls, who did not know each [other] . . . reported seven years apart from each other that" appellant sexually abused them. Each witness answered no.

The trial court orally instructed the jury with a modified version of CALCRIM No. 351 on the cross-examination of character witnesses. We repeat verbatim from the Reporter's Transcript:

> "The attorney for the People was allowed to ask character witnesses if they heard the defendant engaged in concern conduct. These are the questions, ask their answers are not evidence of the defendant engaged in any such conduct. You may consider these questions and answer only to evaluate the meaning and importance of a character witness's testimony."[8]

At the outset, we are unsure whether this was a misreading of the instruction or an error in transcription. In either event, the central point of law of CALCRIM No. 351 was read to the jury. At most, the oral instruction was not word-for-

---

[8]     The form CALCRIM No. 351 provides:
"The attorney for the People was allowed to ask defendant's character witnesses if they had heard that the defendant had engaged in certain conduct. These 'have you heard' questions and their answers are not evidence that the defendant engaged in any such conduct. You may consider these questions and answers only to evaluate the meaning and importance of the character witness's testimony."

17

word with its written counterpart, but without significant omissions.  As for appellant's claim that the instruction was unintelligible, defense counsel's own conduct proves otherwise. Counsel was present in the courtroom when the instructions were read and did not object.  There was no call to correct an aberrant word.

There is also a non-semantical consequence of counsel's failure to object—appellant has forfeited the point on appeal. (*People v. Stone* (2008) 160 Cal.App.4th 323, 331.) Finally, defense counsel addressed the character testimony in closing argument, reminding the jury that three witnesses testified appellant "was not the type of person who would inappropriately touch a child."  Counsel referred to CALCRIM No. 350 as "a very, very important jury instruction, and it tells you that that alone can be reasonable doubt.  [¶]  Just his character."  Defense counsel did not discuss CALCRIM No. 351 with the jury, again suggesting that the trial court's reading was sufficiently clear.

As for the written instruction itself, defense counsel did not object when the trial court provided the jury with the packet of written instructions that had omitted CALCRIM No. 351.  He thereby forfeited this claim of instructional error.  (*Stone, supra*, 160 Cal.App.4th at p. 331.)

Even if under Penal Code section 1259 we were to consider the merits of appellant's claims of instructional error, we would find the errors harmless under both *Chapman v. California, supra*, 386 U.S. at p. 18 and *People v. Watson* (1956) 46 Cal.2d 818.  Appellant contends he was prejudiced by the court's failure to give the jury the written instruction, because the questions put to the character witness essentially "asked the witnesses to

18

assume appellant committed the unproven conduct alleged in the charged offenses."  Not so; the prosecutor's questions asked whether the witnesses' opinion of appellant's good character would change if they were to learn that two girls who did not know each other "reported" that appellant had molested them. The prosecutor's question did not assume appellant's guilt. Instead, it was based on the undisputed facts that the two victims did not know each other and both "reported" that appellant had molested them.  The factual assumption appellant makes for his prejudice argument is not borne out by the record, and the argument accordingly fails.

Finally, we observe that the trial court instructed the jury that nothing the attorneys had said constituted evidence.  For this reason, and in light of the overwhelming evidence against appellant, any error in omitting the written instruction was harmless.

4.    ***Fines and Assessments***

At sentencing, the trial court imposed a $5,000 restitution fine (§ 1202.4), and a parole revocation fine of the same amount, which the court stayed (§ 1202.45).  The court also imposed a $40 court operation fee (§ 1465.8) and $30 conviction fee (Gov. Code, § 70373) on each count.  Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), appellant argues the court violated his right to due process by imposing these amounts without first determining his ability to pay.

The *Dueñas* court held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Dueñas*, *supra*,

19

30 Cal.App.5th at p. 1164.)  It also held that the execution of a restitution fine must be stayed "unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine."  (*Ibid.*)[9]

"Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal."  (*In re Sheena K.* (2007) 40 Cal.4th 875, 880 [juvenile delinquency appeal]; see *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)  Here, appellant did not request an ability-to-pay hearing before the trial court at his August 6, 2019 sentencing hearing even though that hearing postdated *Dueñas* by seven months. *Dueñas* aside, section 1202.4 statutorily authorizes the trial court to consider a defendant's inability to pay when setting a restitution fine in excess of the minimum amount of $300. (§ 1202.4, subd. (d).)  Here, the court imposed a $5,000 restitution fine.  As appellant did not object to the increased restitution fine as allowed by statute, there is no reason to assume he would have contested the lesser amounts.  He has forfeited the argument.[10]

Appellant argues that if he forfeited his *Dueñas* challenge, his trial counsel was ineffective for failing to raise the issue.  To show that counsel was constitutionally ineffective, appellant

---

[9]     Our Supreme Court has granted review to decide whether, as *Dueñas* holds, a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

[10]    Appellant contends that there are several exceptions to forfeiture in this context.  We find appellant's arguments unpersuasive.

must establish both that counsel's performance was deficient and that he suffered prejudice as a result of counsel's error. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) The record is silent as to why defense counsel failed to object to the restitution fine or the assessments without a hearing on appellant's ability to pay. However, there is at least one reasonable explanation: nothing in the record suggests that appellant is unable to pay the $5,000 restitution fine and $280 in assessments out of savings, sellable assets or prison wages paid during his lengthy sentence. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.)

## *DISPOSITION*

The judgment is affirmed.


                                        RUBIN, P. J.

WE CONCUR:



        BAKER, J.



        MOOR, J.